**Mollie H. WATSON and Jack Watson, Plaintiffs-Appellants,**

v.

**INTERSTATE FIRE & CASUALTY COMPANY et al., Defendants,**

**William C. Cowart and Edward M. Mouser, Defendants-Appellees.**

**Nos. 78–1233, 78–1234.**

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1980.

---

Lemuel E. Hawsey, Baton Rouge, La., for plaintiffs-appellants.

Brame, Bergstedt & Brame, Frank M. Brame, Lake Charles, La., Emile C. Rolfs, Baton Rouge, La., Ryder & Deshotels, Alfred R. Ryder, Oberlin, La., for defendants-appellees.

Before AINSWORTH, INGRAHAM and GARZA, Circuit Judges.

AINSWORTH, Circuit Judge:

Mollie H. Watson and her husband Jack Watson brought this action under 42 U.S.C. § 1983 against numerous defendants to recover compensatory and punitive damages for the arrest, incarceration and commitment to Central Louisiana State Hospital of Mollie Watson in December 1975.[1] Two of the defendants, Judge Edward M. Mouser, State District Judge of Allen Parish, Louisiana, and Sheriff William C. Cowart of Allen Parish, moved for summary judgment on the basis of claimed immunity from liability.[2] The district court entered final judg-

---

1. The named defendants are (1) Interstate Fire & Casualty Company, the liability insurer of the Sheriff of Allen Parish, Louisiana, (2) Edward M. Mouser, District Judge of the Thirty-Third Judicial District, Allen Parish, (3) William C. Cowart, Sheriff of Allen Parish, (4) W. Rigsby Hargrove, M.D., who was coroner of Allen Parish in December 1975, (5) James L. Lowry, M.D., who was acting or deputy coroner of Allen Parish in December 1975, (6) Wayne O'Neal Williams, a deputy sheriff for Allen Parish, (7) Ray Shuff, a deputy sheriff for Allen Parish, and (8) Helenie "Chic" Taylor, a deputy sheriff for Allen Parish.

2. Two other defendants, Dr. Hargrove and Dr. Lowry, also moved for summary judgment, but the motions of these defendants were denied by the district court.

ment in favor of these defendants and plaintiffs appeal.[3] We affirm.

Appellant Mollie Watson inherited an undivided interest in a tract of land adjacent to the Watson home in Allen Parish, Louisiana. The Hewitt family was living on this land. A dispute concerning the property led to civil litigation and acts of harassment between the two families. On December 2, 1975, Mollie Watson was convicted of aggravated assault in violation of La.R.S. 14:37 for firing a pistol in the direction of a person she discovered on the tract of land where her family lived. Judge Mouser sentenced her to thirty days in jail and suspended the sentence. He also ordered her to surrender the pistol to the sheriff and refrain from any unlawful activities concerning firearms. Mrs. Watson turned over the pistol to the sheriff's office that afternoon.

The following day the Allen Parish Sheriff's Department received a complaint that Mrs. Watson was walking up and down the road again shooting a gun in the vicinity of the Hewitt residence. Deputies Helenie Taylor and Ray Shuff went to the Watson home to investigate. Upon their arrival, the deputies found Mrs. Watson outside, sitting on the hood of her automobile. A .38 caliber pistol was found on the hood next to her. Mrs. Watson admitted shooting the pistol. The deputies asked her for the pistol and all other firearms she had in the house. She gave them the pistol and went in the house and returned with a .22 caliber rifle, which she turned over to the deputies. Taylor and Shuff then drove to Oberlin, the parish seat, where they deposited the guns with their supervisor, Chief Investigator Wayne O. Williams. Williams had authority over all criminal matters in Allen Parish under authority of the sheriff. The deputies later drove to the Hewitt residence to talk to the members of that household concerning the incident. Taylor and Shuff spoke to Mr. and Mrs. Hewitt and Mrs. Hewitt's son John Bulis. They were told that Mrs. Watson had fired several shots over the Hewitt house. They also learned that the Hewitts had been shooting a rifle at some hickory nuts in a tree located between their house and the Watson residence. Deputy Shuff made out a report based on this information.

While on patrol the next afternoon, December 4, 1975, Deputy Taylor encountered Judge Mouser. During their conversation, Taylor related the incident with Mrs. Watson and the events of the previous afternoon. Judge Mouser then instructed Taylor to put Mrs. Watson in jail. Deputies Taylor and Shuff drove to the Watson home and arrested Mrs. Watson. The deputies took Mrs. Watson to the parish jail in Oberlin where they booked her. The booking entry shows that she was taken into custody on order of Judge Mouser and that she was to be held for a sanity hearing. Both Taylor and Shuff testified that neither of them had made the notation "Hold For Sanity Hearing" and that the entry had not been made in their presence.

The next morning Judge Mouser discussed Mrs. Watson's situation with Chief Investigator Williams. Williams stated that Mr. Watson had mentioned some time earlier that he was concerned about his wife's mental condition. Judge Mouser and Williams then decided to contact the coroner to determine if Mrs. Watson was in need of psychiatric help. On the recommendation of Deputy Coroner Dr. James L. Lowry, as well as on application of the plaintiff herself, Mrs. Watson was committed to Central Louisiana State Hospital, where she remained for thirteen days until her discharge on December 18, 1975.

We conclude that Judge Mouser was performing a judicial function under the circumstances presented here, and hence is immune from liability. Judge Mouser was the only judge in Allen Parish, a small rural

---

**3.** Although the granting of summary judgment in favor of defendants Cowart and Mouser did not terminate the action, the district court determined there was no just reason for delay and directed entry of final judgment in favor of Cowart and Mouser in accordance with Federal Rule of Civil Procedure 54(b). Plaintiffs separately appealed from this judgment and the appeals were consolidated by this court.

Louisiana parish, and he was frequently required to perform official functions outside of the courthouse and outside of normal working hours. Furthermore, he had given Mrs. Watson a suspended sentence on a charge of aggravated assault for similar conduct two days before his instructions to Taylor to arrest Mrs. Watson again. The judge stated in his deposition that a condition of her suspension of sentence was to refrain from any unlawful conduct concerning firearms. Moreover, the issuance of an arrest warrant is a common judicial function. While arrest warrants issued by a judge are normally in writing, Judge Mouser stated in his deposition that he expected Deputy Taylor to prepare the necessary forms. During the conversation with Deputy Sheriff Taylor, Judge Mouser received substantial evidence from him that Mrs. Watson had committed an offense. These circumstances are sufficient to support a finding that Judge Mouser was not acting in a "clear absence of all jurisdiction" at the time he ordered the plaintiff's arrest. Under the doctrine of judicial immunity, dismissal of the suit was clearly proper. *See Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978); *McAlister v. Brown*, 469 F.2d 1280 (5th Cir. 1972).

The suit against Sheriff Cowart was also properly dismissed. Appellants concede in their brief that "Sheriff Cowart was not personally involved in the jailing and commitment of Mrs. Watson. In fact, the sheriff having delegated all responsibility over the criminal functions of his office to the chief investigator, did not even learn of Mrs. Watson's incarceration in the Allen Parish jail and her subsequent commitment to Central Louisiana State Hospital until mid-December 1975." Appellants' Brief p. 25. They claim, however, that he is vicariously liable for the acts of his deputies in arresting and incarcerating Mrs. Watson and in conspiring with others to have her committed to a mental institution allegedly without proper authority and against her will.[4] This court in a recent opinion, *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979) (on rehearing), held that vicarious liability cannot be the basis for recovery against a sheriff for the acts of his subordinates in a suit under 42 U.S.C. § 1983. Liability may be found only if there is personal involvement of the officer being sued, a circumstance which is clearly absent here. *Baskin, supra,* 602 F.2d at 1208.

Appellants also contend that Sheriff Cowart is liable because he failed to supervise his deputies properly and to maintain adequate records of those imprisoned. Since these allegations do not show Cowart's involvement in a pattern of activity designed to deny Mrs. Watson her constitutional rights and are not relevant to the claims involved, they are an insufficient basis for liability under 42 U.S.C. § 1983. *See Rizzo v. Goode*, 423 U.S. 362, 375–76, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976). *See also Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

AFFIRMED.

---

4. Regarding appellants' claim that the defendants conspired to have Mrs. Watson involuntarily committed to Central Louisiana State Hospital without proper authority, the record indicates that Mrs. Watson voluntarily signed an application for commitment and that the commitment was signed by the deputy coroner, who is authorized under La.R.S. 28:52 to take into protective custody and have examined any person suffering from a mental illness.