**Joe REIMER, Plaintiff-Appellant,**

v.

**John SMITH, Individually and in his capacity as an Officer of Texas Rangers, et al., Defendants-Appellees.**

**No. 81–2009**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1981.

Rehearing Denied Jan. 28, 1982.

---

Joe Reimer, pro se.

Nancy M. Simonson, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This case involves a § 1983 action against the Texas Rangers Department of Public Safety and three of its employees for deprivation of property without due process. The trial court found for defendants on all issues. We affirm.

Sometime between the 12th and 15th of December, 1978, Dan North, a sergeant with the Texas Rangers Department of Public Safety, received a report of a stolen mobile Big Mac car crusher from Rudi Rodriguez, a Texas Ranger in San Antonio. Rodriguez provided North with a description of the car crusher, along with the serial number, and a location where the crusher might be found. The alleged victim of the theft was a Dick Vander Vorste. Acting on Rodriguez's information, North called Ranger John Smith and told him to investigate the story. He sent Smith to Graham's Wrecker Service in Baytown, Texas, an establishment owned by John W. Graham. Smith found a Big Mac car crusher attached to an autocar diesel tractor truck. The serial number on the crusher matched the number provided by Rodriguez. Smith told Graham that the car crusher was stolen property and that he should not let the crusher leave the premises without Smith's permission. Graham stated at trial that Smith did not indicate specifically that he was also seizing the autocar diesel tractor truck, but because the crusher and the tractor were coupled together, Graham assumed both were being seized. At trial Smith stated that he only told Graham that he was seizing the car crusher.

Regardless of what was actually seized, it is undisputed that Smith did not follow the statutorily prescribed procedures subsequent to seizure of allegedly stolen property. He did not immediately thereafter file a schedule of the property seized with a court or magistrate explaining why the property had been seized, as required by Texas law.[1] He did file a schedule some two months later, listing only the car crusher as seized.

Subsequent to the seizure, arrangements were made to return the car crusher to its owner, Mr. Vander Vorste. On December 16, 1978, Ranger Smith met at Graham's Wrecker Service with Mr. McDaniel, an employee of Vander Vorste whom Vander Vorste had authorized to pick up the car crusher; Sergeant North instructed Smith that he was to release the car crusher to McDaniel. Once again it is undisputed that North and Smith did not comply with Texas statutory procedures, which require a court order to be issued before seized stolen property can be released to its owner.[2]

When Smith and McDaniel had arrived at Graham's lot, Smith had McDaniel sign a property inventory form which permitted McDaniel to take possession of the car crusher. The form listed only the car crusher. Smith and McDaniel also signed a receipt which was given to Graham. This receipt, prepared by Graham's wife, and based upon information given to her by Graham, states: "Picked up auto car and crusher left on or about November 1, 1978 by Joe Reimer, License 2CX836."

Because the car crusher could not be moved without moving the autocar, McDaniel got into the cab of the autocar and started it. In attempting to move the autocar he damaged it severely. There was disputed testimony as to whether Smith was present at the time the damage occurred.

On December 25th, North got a phone call from the plaintiff, Joe Reimer. Reimer had learned from Graham of the car crusher's removal. It appears that Reimer had brought the car crusher, autocar, and a forklift to Graham's lot early in November of 1978. North told Reimer that the car crusher had been turned over to an agent of Vander Vorste; North did not have any information as to the fate of the autocar diesel tractor. When Reimer visited Graham to check up on his autocar, he found that the whole dash had been ripped out, that a piece of the radiator was gone, and that the engine had been ruined from overheating when the radiator stopped functioning.

Reimer then brought the present action in the Southern District of Texas against Rangers North and Smith, the captain of the Texas Rangers, W. B. Wilson, and the Texas Department of Public Safety. The suit was brought under 42 U.S.C. § 1983, alleging that defendants had deprived Reimer of his property without due process under color of state law by (1) seizing the car crusher, autocar and forklift and (2) damaging the autocar.

The defendants moved to dismiss on the grounds that (1) the Texas Department of Public Safety was immune from a suit for damages under the Eleventh Amendment since the State of Texas had not consented to suit; (2) Wilson was an improper party as there were no allegations of his personal involvement in the alleged deprivations; and (3) the car crusher claim was improper as there was a previous state litigation which had concluded that Reimer was not the owner of the car crusher.

The trial court gave Reimer twenty days to amend his pleadings; Reimer made no amendments, and the court then dismissed

---

**1.** Tex.Crim.Pro.Code Ann. art. 47.03 (Vernon) provides that:

When an officer seizes property alleged to have been stolen, he shall immediately file a schedule of the same, and its value, with the magistrate or court having jurisdiction of the case, certifying that the property has been seized by him, and the reason therefor.

**2.** Tex.Crim.Pro.Code Ann. art. 47.01 (Vernon) provides that:

An officer who comes into custody of property alleged to have been stolen must hold it subject to the order of the proper court or magistrate.

the suit against Wilson. Using the previous adjudication of ownership as defensive collateral estoppel, it granted summary judgment against Reimer on the car crusher claim. However, it did not dismiss the suit against the Texas Department of Public Safety, since there were triable issues of fact which could demonstrate that the officers' actions fell within the provisions of the Texas Tort Claims Act. After a bench trial, the court found for defendants on the merits of the remaining autocar and forklift claims. It also held that the Eleventh Amendment barred the suit against the Texas Department of Public Safety. On appeal, Reimer contests the decision of the trial court on the autocar and forklift claims. He also contests the dismissal of Wilson as a party, the trial court's holding that the Eleventh Amendment barred the suit against the Department of Public Safety, and the summary judgment on the car crusher claim.

### The Autocar and Forklift Claims

The claims that Reimer's autocar diesel tractor truck was illegally seized and damaged and that a "hold" order was placed on his forklift were heard at a bench trial. At the close of the plaintiff's case, defendants moved for a directed verdict and the trial judge granted the motion, entering judgment for defendants. The trial judge later made conclusions of law and findings of fact based on the evidence received before him in accordance with Rule 52 of the Federal Rules of Civil Procedure.

■ Because we are dealing with a bench trial, we will treat the motion for directed verdict granted at the close of plaintiff's case as a Rule 41(b) motion for involuntary dismissal. *See Fidelity and Casualty Company of New York v. Key Biscayne Bank,* 483 F.2d 438 (5th Cir. 1973); 5 Moore's Federal Practice ¶ 41.13[1] at 41–177 n.24 (2d ed. 1976). Although he did not explicitly so state, the trial judge also apparently treated the motion for directed verdict as a Rule 41(b) motion, since he made the findings of fact which are required under that Rule.

■ When reviewing a trial court's grant of a Rule 41(b) motion, we are required to accept the court's findings of fact unless they are clearly erroneous. *M.O.N.T. Boat Rental Services, Inc. v. Union Oil Company of California,* 613 F.2d 576 (5th Cir. 1980); *Robinson v. M/V Merc Trader,* 477 F.2d 1331 (5th Cir. 1973); *Henderson v. Hayden Stone, Inc.,* 461 F.2d 1069 (5th Cir. 1972); *Trask v. Susskind,* 376 F.2d 17 (5th Cir. 1967); 5 Moore's Federal Practice ¶ 41.13[4] (2d ed. 1976).[3]

■ The trial court found that Smith had seized the car crusher but not the autocar or the forklift. Viewing the record as a whole, we cannot say that this finding is clearly erroneous. Smith denied that he had seized either the autocar or the forklift, and the inventory of stolen property he had McDaniel sign at the Grahams' lot listed only the car crusher as subject to release. North testified that he had instructed Smith to seize the car crusher. No evidence was presented that North instructed Smith to seize the autocar or the forklift. The only evidence that anything other than the car crusher had been seized consisted of (1) Graham's statement that he assumed that the autocar had been seized because it was connected to the car crusher, and (2) the receipt prepared by Mrs. Graham for her husband, which listed the car crusher and autocar as being released to McDaniel. It was well within the province of the trier of fact in this case to weigh the conflicting evidence and decide that no seizure of the autocar had taken place. There was clearly no evidence in the record that the forklift had been seized or made subject to a "hold."

■ The trial court also found that North and Smith did not participate in the removal of the Big Mac car crusher which led to the damage to Reimer's autocar. Again we think this finding is supported by the record. It is undisputed that Smith, acting on instructions from North, released the car crusher to Mr. McDaniel. Smith

---

**3.** On review of the grant of a directed verdict motion in a jury case, our standard of review

would be very different. *See Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969).

testified, and the trial court found (although there was some evidence to the contrary), that Smith left after he released the car crusher to McDaniel. In any case, there is no evidence in the record that Smith or North authorized McDaniel to use Reimer's autocar or instructed him or directed him in anyway with respect to the removal of the car crusher. Nor was there any evidence that Smith or North operated the autocar or forklift themselves. On the basis of the record, we are convinced that these findings of fact are not clearly erroneous.

 Because there was no evidence that Smith or North seized the forklift, we agree with the trial court that Reimer has no § 1983 claim of deprivation with respect to that property. As to the autocar, we are equally satisfied that there is no § 1983 claim here. First, according to the findings of fact, there was no seizure. Second, the damage to the autocar was not caused by any negligent or wrongful act of Smith or North. It is true that there was evidence that Smith and North had not complied with statutorily prescribed procedures in seizing the car crusher and releasing it to McDaniel. However, even assuming that these were wrongful and negligent acts, they were not the proximate cause of Reimer's injury. The cause of the injury was McDaniel's operation of the autocar, and, as the trial judge found, "[n]o evidence was adduced at trial that Defendants Smith and North had anything to do with the damage the autocar diesel tractor truck may have received. . . ." I. Rec. 189. The trial judge found that "Smith released the car crusher to Mr. McDaniel and left Mr. McDaniel to remove the car crusher." *Id.* There was no evidence that this action was wrongful or negligent, or that Smith or North should have reasonably foreseen that this action

would result in damage to the autocar. Thus we agree with the trial judge's conclusions of law that defendants are not liable under § 1983 for negligent or wrongful damage to Reimer's autocar and that there was not a proximate causal connection between Smith's and North's actions and the damage suffered by the autocar.[4]

*Eleventh Amendment Issues*

Reimer contests the trial court's holding that the Texas Department of Public Safety cannot be held liable for money damages due to the Eleventh Amendment. Reimer agrees that as a Texas State agency, the Department of Public Safety can only be held liable for monetary damages in a § 1983 action to the extent that the State of Texas has explicitly waived its sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 383 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Reimer claims that the State of Texas has waived its sovereign immunity under Sections 3 and 4 of the Texas Tort Claims Act, Tex.Rev.Civ.Stat. Ann. art. 6252–19, §§ 3–4 (Vernon):

> Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claim-

---

4. It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property. *See Parratt v. Taylor,* —— U.S. ——, ——, n.3, 101 S.Ct. 1908, 1913 n.3, 68 L.Ed.2d 420 (1981) (Supreme Court would assume necessary finding of causal connection between alleged negligence and deprivation of property); *Douthit v. Jones,* 641 F.2d

345 (5th Cir. 1981); *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir. 1979) (in § 1983 action, causal connection must be shown between act of supervisory official and deprivation, either by evidence of direct participation or otherwise); *cf. Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (connection was too tenuous between act of parole board and actions by released convict to constitute unconstitutional deprivation of life).

ant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. Such liability is subject to the exceptions contained herein, and it shall not extend to punitive or exemplary damages. Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for bodily injury or death and to $10,000 for any single occurrence for injury or destruction of property.

Section 4. To the extent of such liability created by Section 3, immunity of the sovereign to suit, as heretofore recognized and practiced in the State of Texas with reference to units of government, is hereby expressly waived and abolished, and permission is hereby granted by the Legislature to all claimants to bring suit against the State of Texas, or any and all other units of government covered by this Act, for all claims arising hereunder.

 However, the trial court found that no evidence was adduced at trial that Defendants Smith and North had anything to do with the damage caused to the autocar, and we must accept this finding as it is not clearly erroneous. Hence Texas cannot be said to have waived its tort immunity with respect to the accident, since the evidence did not support a causal connection between the acts of its employees and the damage suffered by Reimer. As to Reimer's claims with respect to the car crusher and forklift, Sections 3 and 4 are not applicable since (1) Reimer did not allege any property damage to either machine occurring as a result of Smith or North's acts, and (2) even if there were other damages sustained there is no evidence in the record that such damage resulted from the operation or use of the autocar or of these machines. There is no evidence in the record that Smith, North, or McDaniel operated or used the car crusher or the forklift at all. Hence we are convinced that the trial court was correct in holding that Reimer's action against the Texas Department of Public Safety was barred.

### Dismissal of Co-Defendant Wilson

 Reimer argues that the trial court erred when it dismissed W. B. Wilson, Captain of the Texas Rangers, from the § 1983 suit. However, we find no error with the court's action in this regard. Reimer alleged in his pleadings only that Wilson was responsible for the actions of North and Smith as their superior officer, and was negligent in his failure to supervise them; Reimer made no allegations of personal involvement, collaboration, direction, or approval of Smith's and North's acts by Wilson. Nor did Reimer allege in his pleadings that policies instituted by Wilson were unconstitutional, illegal, or wrongful, and that it was the following of these policies by North and Smith which caused Reimer's deprivation. Reimer was given twenty days to amend his pleadings, but failed to do so. Given this, we think that the dismissal was proper. A supervisory official cannot be sued under a theory of pure vicarious liability or respondeat superior under § 1983. *Watson v. Interstate Fire and Casualty Co.*, 611 F.2d 120 (5th Cir. 1980); *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979); *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979). Reimer, of course, had to allege a causal connection between acts of Wilson and the resultant deprivation. *Henzel, supra*, at 658 (§ 1983 claim made against Sheriff of Dade County and director of Florida Prison System.) In *Wanger v. Bonner*, 621 F.2d 675 (5th Cir. 1980), we stated that a supervisory official could not be held liable for failing to adopt policies to prevent constitutional violations, but could be held liable if he affirmatively adopted policies which were wrongful or illegal and which caused the alleged deprivation of constitutional rights.[5] Moreover, we have tradi-

---

5. In *Watson, supra*, a plaintiff filed a § 1983 suit for her arrest, incarceration, and subsequent commitment to a mental hospital. She sued the deputies who arrested her, and also sued the sheriff of the Parish for failure to supervise his deputies. The court held that this

tionally given chiefs of police even more protection under § 1983 from liability for the acts of their subordinates than we have local supervisory officials like sheriffs. In *Ford v. Byrd*, 544 F.2d 194, 195 (5th Cir. 1976), we held that a chief of police is vicariously liable for acts of subordinates only if he directs, orders, or participates in, or approves the acts; *see also, Baskin v. Parker, supra,* at 1211 n.1 (Rubin, J., concurring in part and dissenting in part) and cases cited therein. Thus we agree with the trial court that Reimer failed to allege sufficient facts to survive a dismissal on this § 1983 claim against Wilson.

### The Car Crusher Claim

The sole remaining issue is whether Smith and North are personally liable to Reimer for illegally seizing the car crusher and releasing it to McDaniel. Defendants argued in their motion for summary judgment that Reimer could not prove a § 1983 violation with respect to the car crusher because a previous state litigation had concluded that Reimer was not the owner of the car crusher. The trial court agreed. It ·applied defensive collateral estoppel and granted summary judgment for defendants on the issue of the car crusher.

On appeal, Reimer argues that defensive collateral estoppel should not apply because there is another prior state adjudication which establishes that Reimer did indeed have a proprietary interest in the car crusher.

 The complicated history of the ownership of the car crusher, as best we can determine it, is as follows: Vander Vorste

bought the car crusher in 1970. Ernest Hodges brought the car crusher into Reimer's auto salvage business in Channelview, Texas on August 17, 1978. According to Reimer, the car crusher needed major repairs, which Reimer did not complete until October. Reimer stated that, in the meantime, Hodges had sold the car crusher to a Mr. Joe Sandefer, who in turn, claims Reimer, sold the car crusher to him. Sandefer agreed to assume the costs of repair when he purchased the car crusher. Reimer expended about $15,000 in repairs on the car crusher, and when Sandefer did not pay him, Reimer sued Sandefer and obtained a $15,000 default judgment in Harris County, Texas, on January 5, 1979. *Reimer v. Sandefer,* No. 78–45691 (Dist. Ct. of Harris County, 113th Judicial Dist. of Texas, January 5, 1979). Reimer later obtained a writ of execution on February 16, 1979. However, in November of 1978, Vander Vorste had filed a criminal complaint against Hodges claiming that Hodges had stolen the car crusher from him. *State v. Hodges,* No. 79–CR–0229 (Dist.Ct. of Bexar County, 186th Judicial Dist. of Texas, filed January 31, 1979). When Smith and North pleaded as a defense to the § 1983 suit that Reimer was not the true owner of the car crusher, Reimer filed a motion under Tex.Code Crim.Proc. art. 47.02 (Vernon) [6] alleging that he was the true owner of the car crusher involved in *State v. Hodges*; he requested the court to hold a hearing to determine his rights. A hearing was conducted on March 2, 1979, in the 186th Judicial District Court of Bexar County, Texas. The court considered the judgment in *Reimer v. Sandefer* and heard other evidence; it

---

was an insufficient basis for liability under § 1983, absent the sheriff's involvement in a pattern of activity designed to deny the plaintiff her constitutional rights, citing *Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976).

**6.** Art. 47.02 provides that:

Upon the trial of any criminal action for theft, or for any other illegal acquisition of property which is by law a penal offense, the court trying the case shall order the property to be restored to the person appearing by the proof to be the owner of the same.

Likewise, the judge of any court in which the trial of any criminal action for theft or any other illegal acquisition of property which is by law a penal offense is pending may, upon hearing, if it is proved to the satisfaction of the judge of said court that any person is a true owner of the property alleged to have been stolen, and which is in possession of a peace officer, by written order, direct the property to be restored to such owner.

concluded that Vander Vorste was the true owner of the car crusher. It also stayed the order of the court in *Reimer v. Sandefer*, which had permitted a levy of execution on the car crusher in order to satisfy Reimer's lien on the property.[7] The federal district court in the present action used the Bexar County judgment as a defensive estoppel to prevent Reimer from claiming that he had a property interest in the car crusher.

Reimer contends that defensive collateral estoppel is inappropriate here because there are two prior inconsistent adjudications of his ownership interest. Second, he claims that regardless of the court's decision in the Bexar County hearing, the court in *Reimer v. Sandefer* found that he had a property interest in the car crusher. Third, he claims that it was improper for the Bexar County court to have stayed that judgment. Finally, he claims that the Bexar County judgment should not be used because it was the result of a conspiracy by Vander Vorste and others to trick him into demanding an adjudication of his ownership which he was sure to lose.

■ As a preliminary matter, we note that even if it was improper for the Bexar County court to stay the judgment in *Reimer v. Sandefer*, we cannot correct this alleged error in the present action. "Federal courts are not designed to serve as additional appellate reviewers of State Court judgments." *Reynolds v. State of Georgia*, 640 F.2d 702, 703 (5th Cir. 1981). If there was error or foul play in the Bexar County judgment, it was Reimer's choice to appeal the decision in the state courts. There is no

evidence in the record that Reimer did so, nor has he suggested to us any reason why the decision could not have been appealed. Hence the only questions properly before us are (1) whether the Bexar County judgment can be used as a defensive collateral estoppel, and (2) whether, if the Bexar County judgment is a proper estoppel, Reimer still retains any property interests in the car crusher.[8]

■ The Supreme Court's decision in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), stated that 28 U.S.C. § 1738 requires a federal court in a § 1983 action to give the same full faith and credit to a prior state court judgment that the courts of the state which rendered it would give it. It is well settled in this circuit that in a federal diversity case a prior state court judgment cannot be given a *greater* collateral estoppel effect than the state in which the court sits would give it apparently because *Erie* principles require the federal court sitting in diversity to apply the state's law of collateral estoppel. *Commercial Box & Lumber Co. v. Uniroyal Inc.*, 623 F.2d 371 (5th Cir. 1980); *Cleckner v. Republic Van & Storage Co., Inc.*, 556 F.2d 766 (5th Cir. 1977); *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 325, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971).[9]

■ However, in a federal question case, the question remains whether the federal court may give a prior state judgment *greater* estoppel effect than would the courts of the state where the judgment was entered, based upon the federal common

---

7. Under Texas law, a mechanic's lien cannot be asserted against a stolen vehicle unless the repairs were authorized by the true owner himself. *Drake Ins. Co. v. King*, 606 S.W.2d 812 (Tex.1980).

8. The judgment in *Reimer v. Sandefer* could have no offensive collateral estoppel effect against defendants in this action, since they were not parties to the litigation deciding in favor of Reimer. "In both the offensive and defensive use situations, the party against whom the estoppel is asserted has litigated and lost in the earlier action." *Parklane Hosiery*

*Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979).

9. When a federal court sitting in diversity is considering the collateral estoppel effect of a prior *federal* judgment, this circuit applies federal common law. *Stovall v. Price Waterhouse Co.*, 652 F.2d 537 (5th Cir. 1981); *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Willis v. Fournier*, 418 F.Supp. 265 (M.D.Ga.), *aff'd without opinion*, 537 F.2d 1142 (5th Cir. 1976).

law of collateral estoppel.[10] We do not need to decide this question, however, since we are convinced that any differences between the Texas and federal law of collateral estoppel do not affect the case before us.[11] Federal law permits the defensive use of collateral estoppel, *Blonder-Tongue, supra.* Texas law now appears to permit collateral estoppel against one who has litigated and lost an issue by one who was not a party to the prior litigation. *Hardy v. Fleming,* 553 S.W.2d 790 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Seguros Tepeyac, S. A., Compania Mexicana v. Jernigan,* 410 F.2d 718, 727 (5th Cir.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969).

 We now consider whether the Bexar County judgment can be used as defensive collateral estoppel, and if so, whether Reimer would then have no property interest remaining in the car crusher. The record of the Bexar County proceeding indicates that the issue of ownership was fully and fairly litigated, and that the judge gave due consideration to the previous default

judgment in *Reimer v. Sandefer.* The question of ownership of the car crusher was necessary and essential to the Bexar County judgment; indeed, it was the precise issue before the court. We therefore think that the judgment, standing by itself, constitutes a good estoppel.

Reimer argues that, nevertheless, estoppel effect should not be given the Bexar County judgment because of the previous inconsistent judgment in *Reimer v. Sandefer.* Defendants argue that no problems of inconsistency are present since the order permitting a levy and sale of execution in *Reimer v. Sandefer* was stayed by the later judgment in Bexar County. Furthermore, *Reimer v. Sandefer* is not inconsistent with the Bexar County judgment because the former is only a default judgment which at best adjudicated rights of ownership as between Reimer and Sandefer, not between Reimer and the world. Because the Bexar County Court assumed *in rem* jurisdiction over the car crusher and held that Vander Vorste was the "true owner", it is clear that

10. Of course, in a federal question case relying on a prior *federal* judgment, the federal rules of collateral estoppel and res judicata apply. *Blonder-Tongue, supra,* 402 U.S. at 324, n.12, 91 S.Ct. at 1440, n.12. The problem here is whether in a federal question case relying on a previous state court judgment, § 1738 requires a federal court to use the res judicata and collateral estoppel doctrines of the state in which the prior judgment was entered, because this would give the judgment the same full faith and credit it would have in the courts of that state. *Erie* considerations are not relevant here, since the state which produced the prior judgment is not necessarily the state in which the federal court sits.

11. The question is, however, a puzzling one. The Supreme Court in *Blonder-Tongue* stated that in nondiversity cases since *Erie,* the federal law of collateral estoppel applies. 402 U.S. at 324 n.12, 91 S.Ct. at 1440, n.12. On the other hand, § 1738 is part of the federal rules of res judicata, and it directs federal courts to look to state law to some extent. However, in *Montana v. U. S.,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), a federal constitutional question had been litigated in the state courts of Montana. A subsequent litigation, in which the use of the Montana judgment as an estoppel was at issue, was heard by a three judge federal district court. On appeal, the Supreme Court looked to federal precedent for its deci-

sion, and although it did not explicitly state that federal common law applied, it did not look to Montana jurisprudence to see if less estoppel effect would be given, nor did it mention § 1738.

The Second Restatement of Judgments takes the apparently contrary position that in general, a federal court may not give the state court judgment a greater res judicata or collateral estoppel effect than it would have been given by the state court which rendered it. However, the Restatement notes a possible exception with respect to collateral estoppel: if the state still adheres to the mutuality rule, the federal court may apply estoppel offensively or defensively in accordance with federal principles. Restatement (Second) of Judgments § 134, comment g (Tent. Draft No. 7, April 11, 1980). A still further wrinkle on the problem is given by the Rules of Decision Act, 28 U.S.C. § 1652, which requires federal courts to apply state rules of decision in civil actions where the "Constitution or treaties of the United States or Acts of Congress" do not otherwise require. Of course this leads back to the question of whether § 1738, an "Act of Congress," does authorize greater collateral estoppel effect than the state courts would give. *See generally,* Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741, 750–55 (1976).

Reimer has no property interest in the car crusher but only a money judgment against Sandefer.

■■■■ We think the problem is disposed of on an easier ground. Even if *Reimer v. Sandefer* were a valid judgment on the merits fully and fairly litigated, and inconsistent with the Bexar judgment, the Bexar judgment would estop Reimer from claiming a property interest in the car crusher. This is because *Reimer v. Sandefer* can have no collateral estoppel effect at all in the present case.[12] Even if it did, the Bexar County judgment would prevail as collateral estoppel. This is because if there are two prior inconsistent judgments, only the last judgment has estoppel effect. Restatement (Second) of Judgments § 41.2 (Tent.Draft No. 1, March 28, 1973); Restatement of Judgments § 42 (1942).[13] The Bexar County judgment was a proceeding *in rem* which considered Reimer's claims of proprietary interest in the car crusher based on *Reimer v. Sandefer* and rejected those claims. We must consider this determination conclusive,[14] and therefore we think that the trial court did not err when it granted summary judgment on the car crusher claim. Because Reimer is estopped from claiming a property interest in the car crusher, he could not, as a matter of law, succeed on a § 1983 claim based on a deprivation of the car crusher. One cannot be deprived of property without due process unless one has a property interest in the thing allegedly taken away. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Having found no error in the proceedings below, the judgment of the trial court is in all respects affirmed.

AFFIRMED.

**12.** *See* note 8, *supra.* The defendants were not parties to the previous adjudication and Reimer may not assert an estoppel against them. *Parklane, supra; Hardy v. Fleming, supra*, 553 S.W.2d at 792–793.

**13.** Texas has never addressed this question squarely, and therefore we assume that the Texas Supreme Court would adopt the Restatement rule, which is also the rule used in the federal courts. *Rosenstiel v. Rosenstiel*, 368 F.Supp. 51 (S.D.N.Y. 1973), aff'd, 503 F.2d 1397 (2d Cir. 1974); *Helgesson v. Helgesson*, 196 F.Supp. 42 (D.Mass.), aff'd, 295 F.2d 37 (1st Cir. 1961); *Garden Suburbs Golf & Country Club, Inc. v. Murrell*, 180 F.2d 435 (5th Cir.), cert. denied, 340 U.S. 822, 71 S.Ct. 54, 95 L.Ed. 603 (1950); *Donald v. J. J. White Lumber Co.*, 68 F.2d 441 (5th Cir. 1934); *see Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939). Texas has held that where the *same* court enters two inconsistent final judgments in the *same* case before the *same* parties, the second judgment is a nullity. *See* e. g., *Fugitt v. Slay*, 329 S.W.2d 358 (Tex.Civ. App.—Dallas 1959, writ dism'd w.o.j.); *Witty v. Rose*, 148 S.W.2d 962 (Tex.Civ.App.—El Paso 1941, writ dism'd w.o.j.). However, this rule appears to be not one of res judicata or collateral estoppel, but is rather based on the principle that a court has no power to enter two final judgments in the same case, so that the second judgment is a nullity unless there is proof that the first judgment was vacated. *Fugitt v. Slay, supra*; Tex.R.Civ.P. 301. Of course, if the prior judgment is viewed as interlocutory by the court, it is deemed set aside and the second judgment operates as the only final judgment. *Dickerson v. Mack Financial Corporation*, 452 S.W.2d 552 (Tex.Civ.App.—Houston 1970, writ ref'd n.r.e.); *Keeling v. Zoller*, 388 S.W.2d 274 (Tex.Civ.App.—San Antonio 1965, no writ).

**14.** A proceeding *in rem* concerns the status of property, and determines rights in a property against all the world, equally binding on all. A judgment *in rem* affects not only title to the *res*, but likewise rights in it and to it possessed by individuals. *Ladehoff v. Ladehoff*, 436 S.W.2d 334 (Tex.1968); *Citizens National Bank in Abilene v. Cattleman's Production Credit Association*, 617 S.W.2d 731 (Tex.Civ.App.—Waco 1981, no writ).