MINORITY EMPLOYEES OF the TENNESSEE DEPARTMENT OF EMPLOYMENT SECURITY, INC., et al.

v.

STATE OF TENNESSEE, DEPARTMENT OF EMPLOYMENT SECURITY.

No. 81–3114.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 4, 1983.

See also, 573 F.Supp. 1346.

MEMORANDUM

WISEMAN, District Judge.

In this suit, brought by Minority Employees of the Tennessee Department of Employment Security, Inc. [METDESI] and three named plaintiffs, William C. Koch, Jr., a defendant and former Commissioner of the Tennessee Department of Personnel, has moved for summary judgment. The original complaint was brought under Title VII as well as Sections 1981, 1983, and 1985. The Title VII actions against Koch were dismissed on August 11, 1981. On September 27, 1982, Koch was granted leave to amend his answer to plead that his actions as Commissioner were taken in good faith and that he is entitled to qualified immunity.

Koch was Commissioner of Personnel from February of 1979 through June 30, 1981. On August 11, 1981, portions of the complaint which charged Koch with discriminatory practices were stricken because they allegedly occurred prior to March 6, 1980, and were therefore outside of the applicable period of limitation. The remaining allegations of employment discrimination practices maintained and enforced by Koch under color of state law are the subject of this motion. Koch states in his affidavit that he "never took any action personally to rate, examine, review, or score any application submitted" by the named plaintiffs, Davis, Oliver, and Perry, and that he "took no action at all" regarding these plaintiffs "in any matter relating to their employment tenure or promotional opportunities with the Department of Employment Security." He also states that during his tenure as Commissioner of Personnel, he "knew of no basis for believing that the State of Tennessee's personnel system discriminates in any way against women or minorities." Koch stresses that the basic system was in effect when he became Commissioner and that he instituted no substantial changes in the system.

Koch was the chief operating officer at the Department of Personnel and was responsible for overseeing the State's personnel system. The Department of Personnel

Avon Williams, Richard Dinkins, Nashville, Tenn., for plaintiffs.

Richard Lodge, Nashville, Tenn., for William Koch.

received applications for state employment, maintained lists of eligible candidates for promotions, developed testing devices, kept personnel records, and provided the regulatory framework for employment decisions in the various departments. (Koch Deposition at 10). It administered and developed employment tests and evaluated education and experience to determine the eligibility of the candidates for promotion or employment. (*Id.* at 25). The Department of Personnel furnished the lists of eligibles to the different departments, such as the Department of Employment Security, which would interview the eligibles. (*Id.* at 27). Eligibility registers were required for all civil service positions; the procedures for these positions required selection of the top three eligibles for promotion or the top five for new positions. (*Id.* at 23, 30). No eligibility registers were required for non-civil service positions. (*Id.* at 34). In practice, more than three to five employees were included on eligibility registers because those tied on the top three scores were included. (*Id.* at 30). Additionally, the Department of Personnel would invariably certify 10 to 15 names on a register in "high turn over positions" with the top eligibles delineated with a note saying "you must hire these and only in certain circumstances can you go below that." (*Id.* at 59). The departments were not required to hire any of the eligible candidates they interviewed. (*Id.* at 27). The departments were also free to state whether they wanted to select by promotion or from new pools of applicants. (*Id.* at 28). After registers expired, new lists were created. (*Id.* at 61).

The Department of Personnel also had a policy-making role, and advised the departments about employment matters. (*Id.* at 10, 14). Koch, as Commissioner, had monthly meetings with the heads of sub groups of the policy-making Personnel Officer's Group. (*Id.* at 19). Originally there had been four separate committees on policy, including an affirmative action council, but these groups were dissolved during Koch's tenure and merged into one group. (*Id.* at 15–16). The Department of Personnel had the power to review informally, under a grievance procedure, complaints of persons on the register who were not selected. Formal review of complaints about selection based on non-merit factors was available under the Civil Service. (*Id.* at 56–57).

It was Koch's responsibility to approve all hirings. (Plaintiff's Deposition of Koch, November 11, 1982, at 7). His office received frequent complaints regarding actions on promotions and job applications, and was well aware that there were lawsuits regarding discriminatory hiring practices under the selection system. (*Id.* at 8–9, 11). Koch was responsible for consultation with the examination and research departments to ensure that the system did not have discriminatory effects. (*Id.* at 12). Koch admitted that State employees in positions of responsibility abused the system and made discriminatory employment decisions. (*Id.* at 13–14). He admitted that experience requirements for certain positions may have resulted in discrimination, but stressed that he would review education and experience requirements to prevent "unreasonable" requirements. (*Id.* at 15–16). The Personnel Department had an affirmative action program while Koch was Commissioner and acted as a "consultant and advocate" for the program rather than as enforcer. (*Id.* at 20–21).

The plaintiffs allege, in their response to Koch's Motion for Summary Judgment, that Koch was Commissioner of Personnel at the time the plaintiffs "were attempting to negotiate and exact changes in the personnel system maintained by the Department of Personnel and utilized by the Department of Employment Security." Plaintiff Davis asserted her belief that the discriminatory practices at the Department of Employment Security [DES] "could not have transpired without the overt cooperation of Koch." (Davis deposition at 95). The practices which the plaintiffs challenge include open-ended testing, which allows testing of whites for a position after a register with eligible blacks is allowed to expire, use of subjective, non-job criteria

for grading of experience, use of waivers to persuade qualified blacks to relinquish their positions, and the creation of "new" job classifications tailored to a pre-selected white person. (Complaint ¶¶ 18, 19). Plaintiff Davis contends that she was on the register of eligibles many times and was passed over on numerous occasions in favor of white persons, most of whom were white males. (Complaint ¶ 15). She also alleges that a position was abolished because she was first on the register and that positions were reorganized to assure selection of whites. (*Id.*) Plaintiff Oliver alleges that her application for a position was rejected in favor of that of a white female who was either less or equally qualified. (Complaint ¶ 16). She also claims that there were overall rating problems with applications, and that she would receive the same grade on a second application even though she had more experience than she had had on her first application. (Oliver deposition at 139–141). Oliver also alleges that Koch hired exam scorers and supervisors who discriminated on the basis of race. (*Id.* at 143). Plaintiff Perry states that there was discrimination based on the rating of applications she made for reemployment in the Spring of 1981. (Perry deposition at 48–51). These events all took place while Koch was Commissioner and after March 6, 1980, the cutoff date for the statute of limitations. Moreover, allegations of past practice of discrimination by DES, although not actionable against Koch, demonstrate that he may have maintained continuing practices of discrimination.

■ This Court is obliged to construe the complaint favorably to the plaintiffs, against whom the motion for summary judgment was made. *See, e.g., Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 112, 99 S.Ct. 1601, 1614, 60 L.Ed.2d 66 (1979). The complaint must be read to allege that Koch breached his duty to ensure that the personnel system did not operate discriminatorily. Koch testified that one of his duties as Commissioner was to consult frequently with the Examination Division and the Research Division to ensure that the system was developed and maintained "as neutral, racially neutral and sexually neutral as we could." (Koch November 1982 Deposition at 12).

Courts have required that supervisory officials be involved in actions alleged to violate constitutional rights and have refused to impose liability merely for one's status as a supervisor. From the facts presented, it is clear that Koch did not participate personally in the employment decisions beyond approving the final selections and the applicant pool. The only allegation of personal involvement was made by Davis, who claimed that Koch discriminated against her by informing a Civil Service hearing committee that she had a complaint pending before the courts on the same matter. Koch stated that he informed the committee of this matter because of a Civil Service policy of deferring action on complaints which are pending in tribunals of higher jurisdiction. (*Id.* at 23–25). Allegations of Koch's personal and active involvement in discrimination based on this incident are not substantial.

The plaintiffs have, however, stated a claim based on Koch's alleged failure to supervise properly. In *Barksdale v. King,* 699 F.2d 744, 746 (5th Cir.1983) (per curiam), the Fifth Circuit held that to hold a supervisory official liable for the unconstitutional acts of his subordinates which result in injury, the plaintiff must show that the official either participated personally in the act violating constitutional rights "or that a causal connection exists between [the official] actions and the alleged violation." *Id.* (citing *Henzel v. Gerstein,* 608 F.2d 654, 658 (5th Cir.1979); *Reimer v. Smith,* 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981)). The *Barksdale* court held that this causal connection may be established by showing that the supervisory official breached a duty imposed upon him by state or local law and that this breach caused the injury to the plaintiff's constitutional rights. 699 F.2d at 744 (citing *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir.1976); *Douthit v. Jones,* 641 F.2d 345, 346 (5th Cir.1981) (per curiam)).

Under this theory, Commissioner Koch could be liable for any failure to pursue his duty to ensure that the personnel system did not operate discriminatorily. Koch was aware that individuals under his authority practiced discrimination in hiring. He was also responsible for ratifying all employment decisions. Based on these facts, the Court concludes that Koch is not entitled to summary judgment.

■ Although the motion for summary judgment will be denied, the Court wishes to emphasize that the plaintiffs will have a substantial burden at trial to prove that Koch's actions caused the alleged injuries. Koch is not liable under a theory of vicarious liability or respondeat superior. *Wilson v. Beebe*, 612 F.2d 275 (6th Cir.1980); *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.1982); *Sims v. Adams*, 537 F.2d 829, 831–32 (5th Cir.1976). *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (Municipality cannot be held liable solely because it employs a tortfeasor or under a respondeat superior theory). The plaintiffs must show that Koch caused the plaintiffs to be subjected to the deprivations of their civil rights. *Smith v. Heath*, 691 F.2d 220, 225 (6th Cir.1982); *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570 (6th Cir.1979).

Causation was required for relief under section 1983 in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In *Rizzo* the Court refused to hold the defendant subject to section 1983 relief where the plaintiffs tried to demonstrate culpability for his failure to act merely by showing an "unacceptably high" number of constitutional violations by his subordinates. *Id.* at 373, 96 S.Ct. 598, 46 L.Ed.2d 561. The Court noted that there had been only 20 such incidents in a police department with 7,500 officers and held that there had been no showing of defendant's direct responsibility for the actions, nor any causal link to the violations in question. *Id.* at 373–75, 96 S.Ct. 598, 46 L.Ed.2d 561. The Court therefore refused to impose an injunction ordering reform of department procedures.

The plaintiffs must therefore do more at trial than present evidence that there has been a pattern of discrimination at the Department of Employment Security. They must demonstrate either that Koch breached a legal duty to prevent discrimination and that this omission caused the plaintiffs' injuries, or that Koch had direct responsibility for the injuries by failure to supervise, that he knew or should have known of continuing violations and acquiesced in these unconstitutional actions.

The defendant also claims that he is entitled to summary judgment because his actions under color of state law are entitled to the qualified immunity available to administrative officials under section 1983. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Supreme Court has held that damage suits for constitutional violations "can be terminated on a properly supported motion for summary judgment based on the defense of immunity." *Butz v. Economou*, 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978). Summary judgment decisions on qualified immunity protect officials in the performance of their discretionary duties by permitting insubstantial lawsuits to be quickly terminated. *Id.*

■ For the defendant to prevail on the issue of qualified immunity he must demonstrate that he acted in good faith. He will fail in this respect if he "knew or reasonably should have known" that his acts would violate constitutional rights or if acted with malicious intention to cause such a violation. *Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). Bare allegations of malice will not survive a motion for summary judgment. If, however, an official's conduct violates clearly established constitutional rights of which a reasonable person would have known, the qualified immunity defense "ordinarily should fail, since a reasonably competent official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct.

2727, 2738, 73 L.Ed.2d 396, 410–11 (1982). This standard bases the availability of qualified immunity on the objective reasonableness of an official's acts. It requires a court to determine whether clearly established rights are implicated. *See id.*, at 818, 102 S.Ct. at 2738, 73 L.Ed. at 411.

■ The defendant Koch has not demonstrated that the law governing employment discrimination was not clearly established at the time he was Commissioner. Discrimination in conditions of employment by state officials on the basis of race has long been held to violate the equal protection clause as well as sections 1981 and 1983. The complaints in this case allege that Koch was responsible for causing deprivations of these rights. These allegations are not insubstantial; material facts remain in dispute on this issue. Accordingly, a decree of summary judgment on this issue would be inappropriate.

For all of the above reasons, the motion of the defendant for summary judgment will be denied.