762 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LEORY LEVER, ET AL., PLAINTIFFS-APPELLANTS,
v.
BRIAN RAPP, CITY MANAGER OF THE CITY OF FLINT, ET AL.,
DEFENDANTS-APPELLEES.
 NO. 83-1820
 United States Court of Appeals, Sixth Circuit.
 4/11/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: WELLFORD and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Plaintiffs appeal from a district court's entry of adverse judgment in their suit under 42 U.S.C. Sec. 1981 and Sec. 1983 alleging intentional discrimination in violation of their rights guaranteed by the equal protection clause of the Fourteenth Amendment.
 
 
 2
 In July 1973 a group of black plaintiffs first instituted suit against City Manager Brian Rapp and Public Works Director Anthony W. DeBlaise of Flint, Michigan, officials of the Michigan Department of Natural Resources, and General Motors Corporation (GMC). Plaintiffs accused defendants of engaging in a conspiratorial policy to allow pollution from a GMC manufacturing plant to cause disproportionate harm to the predominately black housing in the adjoining area known as the St. Johns neighborhood.
 
 
 3
 Over the next decade the suit underwent lengthy maneverings regarding parties and the nature of the allegations. It was finally shaped into a suit alleging intentional racial discrimination against Rapp and DeBlaise in their official capacities for failing to enforce local ordinances and otherwise exert requisite oversight to protect the well-being of the predominantly black St. Johns' community. On October 25, 1983 District Judge Newblatt dismissed the plaintiffs' cause of action under Rule 41(b) of the Federal Rules of Civil Procedure after presentation of plaintiffs' evidence in the non-jury trial.
 
 
 4
 The district judge noted, without specifically finding, that the history of city policy toward the 'intolerable' conditions in the St. Johns area 'reeks' with racially motivated indifference up through the 1960s. Judge Newblatt, however, found that there was simply no evidence to support an inference of racial discrimination against defendants Rapp and DeBlaise. In respect to Public Works Director DeBlaise, who held that office from 1964 to 1976, Judge Newblatt stated that the court had 'been provided no information whatsoever as to what he [DeBlaise] did or failed to do, except the generalized claim that he was in charge of enforcing the City's air pollution ordinance, which was not enforced. There is absolutely no evidence whatever as to Mr. DeBlaise's intent or lack of it.' As Judge Newblatt also pointed out, the city of Flint did not even have a pollution ordinance for DeBlaise to enforce until 1970. In respect to City Manager Rapp, who held office from 1971 and 1974, the court specifically found that he made racially beneficial changes in the Department of Community Development and accelerated the rehabilitation project in the St. Johns area. According to Judge Newblatt, there was 'simply no evidence of [the] racially discriminatory motive of Defendant Rapp except some vague claim that he did not proceed fast enough.'
 
 
 5
 It is well established that this court's review of a trial court dismissal under Rule 41(b) after plaintiff's presentation of evidence in a non-jury trial is limited to determining whether the dismissal (and the findings upon which it was based) was clearly erroneous. See, e.g., Renier v. Smith, 663 F.2d 1316 (5th Cir. 1981). Here the trial judge has not summarily disposed of the case by holding that the plaintiff failed to state a cognizable claim or otherwise failed to present a provable prima facie case. The district court instead found that the plaintiffs' full evidentiary presentation failed to provide probative evidence of the required intentional racial discrimination by city officials DeBlaise and Rapp at the pertinent times in controversy.
 
 
 6
 The plaintiff/appellants cite and depend upon cases in which the city itself was named as a party. See, e.g., Dowdell v. City of Apoka, 511 F. Supp. 1375 (MD. D. Fl. 1981), modified on non-related issue in 698 F.2d 1181 (1983). In Dowdell the city was held liable for intentional discrimination against black neighborhoods in its street paving, water sewer drainage, and water distribution services. The appellants also cite such school board desegregation cases as Columbus Board of Education v. Penick, 443 U.S. 449 (1979), and Brown v. Board of Education, 347 U.S. 483 (1954). The city of Flint was not a defendant, nor treated as a defendant, before the district court.
 
 
 7
 Plaintiff/appellants now insist that the city of Flint is, in effect, a party to the suit. In Monnell v. Department of Social Services, 436 U.S. 658 (1978),[1] the Supreme Court appeared to indicate that a suit against a city official in his official capacity can be construed as a suit charging the city with liability. The Court has confirmed this view in the very recent case of Brandon v. Holt, ---- U.S. ----, 105 S.Ct. 873 (1985). Nevertheless, even under Monnell and Brandon, the city can only be held liable for the official actions of the named officials in the suit. Actions taken by other city officials--especially those actions when the named defendants were not in office--can hardly prove a case against named defendants in their official capacities. Only the official actions or omissions of defendants Rapp and DeBlaise were at issue.
 
 
 8
 In light of our limited function on review and the narrow focus of official action implicated by the suit, we affirm the district judge's entry of judgment. There appear to be only three areas of evidence presented by plaintiffs which could possibly be considered probative of intentional racial discrimination in the context of this complaint.
 
 
 9
 First, plaintiff's urban planning expert, Yale Rabin, testified that the urban renewal program initiated in Flint during the 1970s was slow and deficient in addressing the problems of the St. Johns area due to racially discriminatory reasons. Public Works Director DeBlaise, however, was never shown to have any official responsibility for the urban renewal program. City Manager Rapp, on the other hand, had general responsibility for implementing the program. Yet most of Rabin's testimony concerned the racial discrimination against the St. Johns area in the prior formulation, planning and adoption of the program in 1970. He stated that white areas were unjustifiably given higher priority. It is important to note that Rapp did not begin as City Manager until 1971.
 
 
 10
 Undisputed evidence moreover, demonstrated that Rapp cleared up previouse mismanagement in the urban renewal projects. He hired blacks for his deputies and manager of the St. Johns project. By 1974 his apparently aggressive managerial strategy had resulted in the city's purchasing over half the properties in the plan, relocating a total of 220 families (in comparison to the total of only six families who were relocated the year before his tenure), and attracting of three major developers. Although St. Johns was not completely renovated, the trial judge was certainly justified in finding Rapp's actions not to display intentional racial discrimination.
 
 
 11
 Second, the plaintiffs attacked City Manager Rapp's 'pet project'--the relocation of the University of Michigan at Flint. His support for this project allegedly demonstrated his discriminatory concern for projects benefiting non-minorities. Rapp acknowledged his support for a relocation of the campus to a downtown riverfront site. Rapp testified that he actively supported the idea as a way to revitalize and diversify downtown Flint. He also specifically testified that the cash contribution of the City would lead to matching federal monies (up to $10 or 15 million), which could be used for urban renewal projects. Rapp also testified that he sought and gained the support of most neighborhood groups for the project. He even testified that he received the official support of the St. Johns District Council. Plaintiffs produced no evidence demonstrating the alleged discriminatory nature of his support for the project, nor did they contradict the effect of Rapp's testimony.
 
 
 12
 Third, the degree of pollution remained disproportionately high in the St. Johns area despite the anti-pollution policies of the city in the 1970s. Flint did not have a comprehensive air pollution ordinance that Public Works Director DeBlaise could implement until 1970. Federal grant money to conduct a comprehensive preliminary study was not received before 1968. DeBlaise then moved promptly to establish an Air Pollution Control Division under the Department of Public Works in Flint. Furthermore, the city met federal standards prior to the deadlines established.
 
 
 13
 Undisputed evidence shows that from 1971-1972 the degree of pollution in Flint, including the St. Johns area, was significantly diminished. The latter area demonstrated a 26% decrease from 1971-1972. In 1974 the St. Johns area was brought into compliance one year before the deadline established by the Environmental Protection Agency. There are no grounds for construing DeBlaise's actions in this respect as somehow rising to the level of intentional discrimination.
 
 
 14
 The trial court was not shown to be in error in respect to his findings and conclusions. Accordingly, we affirm the district court's entry of judgment against the plaintiffs.
 
 
 
 [1]
 When the plaintiffs initiated suit in the early 1970s, municipalities could not directly be sued under Sec. 1983. See Monroe v. Pape, 365 U.S. 167 (1961). Yet Monnell, supra, overruled Pape on this point in 1978. In the succeeding years plaintiffs have never amended to join the city as a named party, nor made any effort to bring in the City as a responsible entity. They had a number of years to accomplish this if they had any serious intention to make the city liable on the allegations made