[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16697
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-60209-CV-JEM

JOHN N. HEARN,
a.k.a. Jack,
JOHN ROUSSELLE,
TIMOTHY HARKINS,

                                                        Plaintiffs-Appellants,

CHRISTOPHER O. BARTLETT,
HENRY P. MALLON,

                                                        Plaintiffs,

versus

MICHAEL MCKAY,
ROBERT MCKAY, individually and as officers of the
American Maritime Officers Union and the American
Maritime Officers Union,

                                                        Cross-Defendants,

EDWARD KELLY,
PAUL CATES, individually and as oficers of the
American Maritime Officers Union and the American
Maritime Officers Union, et al.,

                                                        Defendants,

THOMAS BETHEL,
DONALD NILSSON,
DANIEL SMITH,
DONALD CREE,

                                    Defendants-Cross-Claimants-Appellees,

JOSEPH GREMELSBACKER, individually and as oficers
of the American Maritime Officers Union and the American
Maritime Officers Union,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 15, 2010)

Before EDMONDSON and PRYOR, Circuit Judges, and CAMP,[*] District Judge.

PER CURIAM:

This appeal is by several members of the American Maritime Officers Union

("AMO") in their unsuccessful civil action against current and former officers of

the AMO.  Appellant-Plaintiffs contend that the district court erred in this way: (1)

granting summary judgment in favor of Defendants on the issue of whether a union

officer violates the fiduciary duties established by the Labor-Management

_____

    [*] Honorable Jack T. Camp, United States District Judge for the Northern District of
Georgia, sitting by designation.

Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), if that officer aids, abets, or fails to remedy the misuse of assets belonging to a jointly administered benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq; and (2) making an erroneous factual finding and abusing its discretion in two evidentiary rulings during the bench trial.[1]

Seeing no reversible error, we affirm.

## I. BACKGROUND

The AMO is a maritime labor organization headquartered in Florida; its members are licensed officers in the United States Merchant Marine Fleet. Appellant-Plaintiffs are members of the AMO. Appellee-Defendants are current or former officers of the AMO. Robert McKay and Michael McKay were defendants in the civil action, but both failed to answer the complaint and defaulted; neither is involved in this appeal.[2] Michael McKay was the AMO's National President from 1994 until early in 2007, when he was forced to resign following his felony

---

[1]Plaintiffs also claim that the district court erred by denying their untimely motion to amend their complaint to add a new breach of fiduciary duty allegation. We cannot conclude that the district court abused its discretion in declining to allow Plaintiffs to amend the complaint after the pretrial order's deadline for amendments had passed.

[2] We use "Defendants" to refer to the non-defaulting defendants in the district court that are now involved in this appeal.

convictions for violations of LMRDA and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Robert McKay, Michael's brother, was the AMO's Secretary Treasurer from 1994 until he was defeated in the 2006 election; Robert has also been convicted of LMRDA and RICO violations.

Pursuant to collective bargaining agreements, the AMO and its associated employers jointly established various employee benefit plans to which the employers contribute.  The two plans pertinent to this appeal are the Vacation Fund, which provides vacation benefits to plan participants, and the Safety and Education Fund, which provides training and apprenticeship benefits to plan participants.  Both of these plans are established as trusts and are governed by ERISA.  The plans are administered by a Board of Trustees composed of union appointees and employer appointees.

The Department of Justice opened a criminal investigation to determine whether certain AMO officers used their positions to violate federal law.  The AMO's National Executive Board retained outside counsel to advise and assist the AMO in cooperating with the investigation; the benefit plans hired separate outside counsel.  The AMO also initiated an internal investigation coordinated by its outside counsel and two former FBI agents.  One of the issues investigated was whether the AMO officers had knowledge of a scheme whereby Michael McKay

4

granted bonuses to other union officers as reimbursements for political campaign contributions. The benefit plans conducted their own internal investigation to determine if there had been a misuse of plan assets.

The AMO's outside counsel advised the union's National Executive Board that he had found no evidence of financial irregularities at the union and did not believe a more comprehensive review of the AMO was necessary. But, the outside counsel did recommend that the AMO establish guidelines for officer conduct and controls for the management of union funds; AMO adopted the guidelines.

The benefit plans' internal investigation revealed that lodging facilities owned by the Safety and Education Plan had been occasionally used by the union or people affiliated with the union without proper payment. The union entered into a settlement agreement with the Safety and Education Plan and paid it $183,000 to cover the unbilled lodging expenses.

A federal grand jury later indicted Michael and Robert McKay for participating in a RICO conspiracy involving theft and embezzlement from the union and from the benefit plans, mail fraud under 18 U.S.C. § 1341, and committing LMRDA record keeping violations under 29 U.S.C. §§ 436 and 439(a). Michael McKay was also charged with theft or embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664 and falsification of records

5

and certified information pertaining to an employee benefit plan in violation of 18 U.S.C. § 1027. Robert McKay was also charged with embezzlement from a labor organization under 29 U.S.C. § 501(c) and false entry in records required by LMRDA in violation of 29 U.S.C. § 436 and 439(c). None of the Defendants involved in this appeal were indicted.

After the indictment, the AMO's National Executive Board suspended the McKays' check-writing privileges and required Robert to resign his position as a trustee of the benefit plans. The AMO's National Executive Committee[3] held a special meeting to review the allegations in the indictment and, on the advice of outside counsel, decided not to remove the McKays from office until the allegations had been proved.[4] At trial, Thomas Kelly, a former AMO Vice President, testified for the government pursuant to a plea agreement whereby he plead guilty to embezzlement from a labor organization. The McKays were found guilty on all charges of the indictment, except that Michael McKay was found not

---

[3]The National Executive Committee consists of a subset of the membership of the National Executive Board.

[4]Michael McKay was reelected as President during the criminal trial; Robert McKay was defeated in the same election. To the extent that Plaintiffs also claim that the district court erred in finding that Defendants did not breach their duties after becoming aware of the government's investigation, we reject the claim on the reasoning of the district court: basically, lack of credible evidence of wrongdoing by Defendants.

guilty on the charge of theft or embezzlement from an employee benefit plan.[5]

After the McKays' convictions, Defendants removed Michael McKay from his union office.

Plaintiffs later filed this civil complaint. Count II asserted a violation of section 501(a) of the LMRDA and is pertinent to this appeal. Count II alleges that based on Michael McKay's criminal conviction, he breached his fiduciary duties to the AMO by committing acts of bribery and embezzlement from the union and benefit plans, by filing false reports with the Department of Labor, and by unlawfully tampering with the 1996 and 1999 elections. Count II similarly alleges that based on Robert McKay's criminal conviction, he breached his fiduciary duties to the AMO in the same way and that he also misused the benefit plans' assets for personal benefit. For Defendants before us on appeal, Count II alleges that they breached their fiduciary duties by "knowingly aiding, abetting and failing to remedy the continuing unlawful actions of . . . Michael McKay and Robert McKay."

The district court entered a default judgment against the McKays and granted partial summary judgment in favor of the remaining Defendants. The district court concluded that no justifiable claim was demonstrated against

_____

[5]We affirmed in an unpublished opinion.

7

Defendants under the LMRDA for aiding, abetting, or failing to remedy the McKays' misuse of the benefit plans' assets and concluded that Plaintiffs did not submit sufficient evidence to support their claim that Defendants' involvement in the decision to reimburse the Safety and Education Plan was improper. The court concluded issues of material fact existed about whether two Defendants breached their fiduciary duties by participating in the rigging of elections, but granted summary judgment on that issue in favor of all other Defendants. The court also concluded that there was sufficient evidence to defeat summary judgment for all but one Defendant on the issue of whether they breached their fiduciary duties by approving bonuses to reimburse political campaign contributions. A bench trial was held on the issues that had not been determined by the pretrial motions. The district court then issued detailed findings of fact and conclusions of law and granted judgment in favor of Defendants.

## II.  DISCUSSION

A.    District Court's Grant of Summary Judgment on Section 501(a) Claim Relating to the Misuse of ERISA Plan Assets

Plaintiffs challenge the district court's grant of summary judgment in favor of Defendants on the issue of Defendants' liability under 29 U.S.C. § 501(a) for aiding, abetting, and failing to remedy the McKays' misuse of the assets of the Safety and Education Plan and the Vacation Plan, both plans being governed by ERISA.  These plans are jointly administered by a board of trustees composed of members appointed by the union and members appointed by the employers.  The district court granted summary judgment in favor of Defendants because the allegedly misused assets belonged to the plans and not the union: the breach of duty claim arose under ERISA and not LMRDA.

We review a grant of summary judgment de novo, using the same standard as the district court; we can affirm if no genuine issues of material fact are present. Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1317 (11th Cir. 2009). The question presented also involves questions of  statutory interpretation, which we review de novo.  United States v. Mazarky, 499 F.3d 1246, 1248 (11th Cir. 2007).

Officers of a labor union "occupy positions of trust in relation" to the organization and owe fiduciary duties to the "organization and its members as a group."[6] 29 U.S.C. § 501(a). We agree with the district court that Defendants have not breached their fiduciary duties under section 501 in connection with the McKays' misuse of the benefit plan assets. As union officers, Defendants have duties to the "organization and its members as a group." 29 U.S.C. § 501(a). Here, neither the union nor its members as a group own the allegedly misused funds. Under the Agreements and Declarations of Trust establishing both plans, the union has no "right, title or interest in or to the Fund, or any part thereof." Once funds enter the plan, they become part of an "irrevocable trust" and the "assets of the Plan." The plans are distinct legal entities separate from the union, 29 U.S.C. § 1132(d), controlled exclusively by the trustees for the benefit of the plan participants and beneficiaries, 29 U.S.C. § 1104(a)(1). When a plan's assets are

_____

[6]Section 501(a) states in pertinent part:
The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

10

misused, the breach of duty is one between the trustees and the plan's beneficiaries (a separate constituency from the union and its members as a group).[7]

That some of the Defendants may have been appointed trustees of the benefit plans does not change the result. ERISA explicitly allows for union officers to act as trustees of benefit plans. 29 U.S.C. § 1108(c)(3). That serving two masters can be problematic is, of course, well recognized in the law. See Deak v. Masters, Mates and Pilots Pension Plan, 821 F.2d 572, 580 (11th Cir. 1987) ("[T]he statutorily imposed fiduciary duty to act solely in the interest of the participants and beneficiaries under ERISA requires trustees who are also officers or agents of a corporation or a union to act with caution in areas of potential conflicts of interest."). But when a union official is acting in his role as an ERISA benefit plan trustee, he does so exclusively for the benefit (or to the detriment) of the plan participants and beneficiaries, not the union or its members as a group. 29 U.S.C.

_____

[7]In support of their argument, Plaintiffs briefly note that the AMO itself suffered a substantial loss of union funds when Defendants caused the union to enter into a settlement agreement to reimburse the plans. While that circumstance seems more likely to fall within the scope of section 501(a), that event is different from the claim presented to us on appeal, which is whether Defendants violate section 501(a) when a plan trustee misuses plan assets. The district court concluded that Plaintiffs produced no evidence to create a genuine issue of material fact about the propriety of the union's settlement with the Safety & Education Fund; in the light of our precedents, Plaintiffs have not adequately challenged this determination on appeal. See Flanigan's Enters. v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (A bare allegation will waive an issue on appeal if the party ''fail[s] to elaborate or provide any citation of authority in support of the . . . allegation.''); Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").

11

§ 1104(a)(1); see Deak, 821 F.2d at 579-80.

The Supreme Court has been explicit about the undivided nature of an ERISA trustee's role and duties. The trustee "bears an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties." N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc., 101 S. Ct. 2789, 2794 (1981). "ERISA vests the 'exclusive authority and discretion to manage and control the assets of the plan' in the trustees alone, and not the employer or the union." Id. at 2796 (quoting 29 U.S.C. § 1103(a)). ERISA's fiduciary provisions "were designed to prevent a trustee from being put into a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." Id. (citation and internal quotation marks omitted). When a union officer steps into his role as a trustee and directs a trust's funds, his direction is solely in his capacity as trustee, subject to the strict fiduciary duties contained in 29 U.S.C. § 1104.[8] This duty is so regardless of which body appointed him in his role as trustee. See Amax Coal, 101

[8]The unique role of an ERISA trustee distinguishes this case from Hood v. Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors Intern. Union of America, 454 F.2d 1347 (7th Cir. 1972), and Morrissey v. Curran, 423 F.2d 393 (2d Cir. 1970), relied on by Plaintiffs. In those pre-ERISA cases, courts applied section 501(a)'s duties to trustees of employee benefits plans. Hood, 454 F.2d at 1355; Morrissey, 423 F.2d at 394-96. But in both cases, the benefit plans were an exclusively union undertaking that was not collectively bargained or jointly administered. Hood, 454 F.2d at 1351; Morrissey, 423 F.2d at 394-95. To apply a similar rule here would be incompatible with the strict statutory duty of loyalty owed by the ERISA trustees to the plans' beneficiaries.

12

S. Ct. at 2796 ("The language and legislative history of § 302(c)(5) and ERISA therefore demonstrate that an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him.").

We therefore affirm the district court's grant of summary judgment.[9]


B.      District Court's Factual Findings and Evidentiary Rulings from the Bench Trial


Plaintiffs appeal several of the district court's evidentiary rulings and factual findings. They argue that the district court erred by: (1) allowing an undisclosed witness to testify; (2) finding their witness, Thomas Kelly, incredible when that witness testified in a successful criminal prosecution about the same issues; (3) excluding transcripts of prior testimony of other witnesses who testified during the criminal trial but were unavailable for this trial. None of Plaintiffs' contentions rise to the level of reversible error.

About the first issue, undisclosed witnesses may still be used at trial if the disclosure failure was substantially justified or if it was harmless. Fed. R. Civ. P.

---

[9]Because we affirm the district court on this ground, we need not and do not discuss Defendants' contention that some of the Defendants were not trustees of the Safety & Education Fund at some of the times when material decisions were taken.

13

37(c)(1).  We review the district court's decision to allow an undisclosed witness to testify for abuse of discretion.  See Romero v. Drummond Co., Inc., 552 F.3d 1303, 1313-14 (11th Cir. 2008).  Here, the district court allowed the witness to testify for the limited purpose of establishing that Defendants made prior consistent statements.[10]  Plaintiffs rejected the district court's offer of additional time to prepare.  In addition, Defendants disclosed the witness in their pretrial stipulation, lessening the degree of surprise.  We cannot say that the district court abused its discretion.  See Citizens Bank of Batesville, Arkansas v. Ford Motor Co., 16 F.3d 965, 967 (8th Cir. 1994) (declining to second-guess district court's exercise of discretion to allow witness testimony when, among other reasons, counsel failed to request a continuance or recess).

Second, Plaintiffs claim that the district court erred by finding Defendants' testimony more credible than Kelly's when Kelly's testimony mirrored that in the related successful criminal prosecution of the McKays.  "[I]t is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony."  Childrey v. Bennett, 997 F.2d 830, 834 (11th Cir. 1993).  We will reverse only if the district court clearly erred.  Stano v. Butterworth, 51 F.3d 942, 944 (11th Cir. 1995).  Plaintiffs have not shown that the

---

[10]Plaintiffs do not challenge this characterization of the witness's statements.

14

district court's account of the evidence is entirely implausible; there was no clear error. See id.

Third, Plaintiffs appeal the district court's refusal to allow the previous, sworn testimony of two witnesses from the McKays' criminal trial when those witnesses were unavailable at trial: they resided in excess of 100 miles from the district court. Fed. R. Evid. 804(b)(1) excludes from the definition of hearsay "[t]estimony given as a witness at another hearing . . . if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The district court did not believe that the McKays, in their criminal trial, were predecessors in interest to Defendants in this civil trial. We review for abuse of discretion the district court's decision not to allow the earlier testimony. See Parrott v. Wilson, 707 F.2d 1262, 1269 (11th Cir. 1983).

We need not interpret the meaning of Rule 804(b)(1)'s "predecessor in interest" clause today. Even if the district court erred by refusing to admit the prior testimony, that error was harmless.[11] The excluded testimony was merely

---

[11]Erroneous evidentiary determinations that do not affect the substantial rights of a party must be disregarded. 28 U.S.C. § 2111; Fed. R. Civ. P. 61; Fed. R. Evid. 103(a). Errors affect a substantial right "if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." United States v. Frazier, 387 F.3d 1244, 1266 n.20 (11th Cir. 2004) (en banc) (quoting Kotteakos v. United States, 66 S. Ct. 1239, 1248 (1946)).

15

corroborative of Kelly's testimony. The district court found Kelly incredible in part because of his felony conviction in the related criminal investigation. The excluded testimony came from people who also had felony convictions from the same related criminal investigation. Viewing the record as a whole, we think that the exclusion of the cumulative evidence did not substantially influence the outcome of the case. See United States v. Hock, 995 F.2d 195, 197 (11th Cir. 1993) (finding harmless error when evidence was only cumulative and corroborative).

## III. CONCLUSION

Given the circumstances, the district court correctly determined that LMDRA gave rise to no breach of fiduciary duty claim for the misuse of the benefit plans' assets. The district court's factual determinations and evidentiary rulings did not result in reversible error.

AFFIRMED.