[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-15443

————————————————

D.C. Docket No. 7:14-cv-00172-HL-TQL

ALEAKEEM PETERSEN,

Plaintiff-Appellant,

versus

WAYNE SMITH,
FRANK BLANTON,
RANDY CHILDERS,
CHRISTOPHER HOOPIIAINA,
CLIFTON OUZTS,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia

————————————————

(February 13, 2019)

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK,[*] District Judge.

PER CURIAM:

Plaintiff-Appellant, Aleakeem Petersen, requests that this Court grant him a new trial on his 42 U.S.C. § 1983 civil rights action, through which he alleges Defendants-Appellees, Wayne Smith, Frank Blanton, Randy Childers, Christopher Hoopiiaina, and Clifton Ouzts (collectively, "Defendants"), subjected him to excessive force in violation of his Eighth Amendment rights. After a two-day trial a jury returned a verdict for Defendants. After consideration of the record and oral argument, we affirm.

## I.    FACTS AND PROCEDURAL BACKGROUND

On November 13, 2012, Petersen was housed at the Valdosta State Prison when his right arm was broken during an encounter with Defendants, who were, at the time, correctional officers stationed at the prison. After exhausting his available prison remedies, Petersen filed a *pro se* 42 U.S.C. § 1983 civil rights action against Defendants in the United States District Court for the Middle District of Georgia, alleging excessive use of force in violation of his Eighth Amendment rights. A jury trial was held July 20–21, 2016.

---

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

Petersen alleges that the beating which constituted the encounter was excessive and without cause.  For their part, Defendants argue that Petersen initiated the encounter by running at Sergeant Smith with a knife, and that they used no more force than was necessary to gain "positive control" of Petersen.  While Defendants concede that Petersen's arm was broken during the encounter, they argue that this was the result of the application of lawful force.

After close of evidence, the verdict for Defendants was returned, and judgment was entered.  This appeal followed.  Petersen's appeal challenges two of the district court's evidentiary rulings, its jury instructions, and its decision not to appoint counsel for him.

## II.    STANDARD OF REVIEW

Generally, "[r]ulings on the admissibility of evidence are reviewed for abuse of discretion."  *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 556 (11th Cir. 1998).  However, a claim of evidentiary error that has not been properly preserved is reviewed for plain error.  Fed. R. Evid. 103(d) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."); *see also ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018) (reviewing the district court's admission of evidence for plain error where plaintiff failed to object when the evidence was admitted at trial).

"We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *United States v. Myers*, 972 F.2d 1566, 1572 (11th Cir. 1992). However, plain error review is appropriate where the appellant failed to raise an objection to jury instructions at trial. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) (specifying that this is the case where objection at trial would not have been futile).

Finally, we review a district court's decision to deny appointment of counsel for abuse of discretion. *Killian v. Holt*, 166 F.3d 1156, 1157 (11th Cir. 1999).

## III.    DISCUSSION

### A. Evidentiary Rulings

#### 1.  Disciplinary reports

At an April 15, 2016 pretrial conference, Defendants moved, pursuant to Fed. R. Evid. 404(b), for permission to admit into evidence three disciplinary reports that documented three separate instances (apart from the encounter at issue) in which Petersen possessed a knife in prison. Defendants argued these past reports of knife possession were probative of Petersen's intent to possess a knife during the encounter. During the pretrial conference, and over Petersen's objection, the district court initially determined that the evidence was proper Rule 404(b) evidence and would be admissible at trial.

At trial, during their case in chief, Defendants attempted to introduce into evidence the disciplinary reports. In response, the court excused the jury and reversed its earlier determination, ruling that the disciplinary reports could not be submitted to the jury for Rule 404(b) purposes. The court further informed the parties, however, that Defendants could still use the contents of the disciplinary reports solely to impeach Petersen's testimony.

In accordance with this ruling, Defendants called Petersen as a party opponent and, in a purported attempt to impeach Petersen, briefly questioned him regarding whether he had ever received disciplinary reports for weapon possession. Petersen did not object and answered affirmatively.

Petersen argues the district court erred by permitting Defendants to question him regarding the disciplinary reports to "impeach" his credibility.

### i. Petersen did not preserve for appeal his objection to the use of the disciplinary reports at trial

To successfully challenge a verdict on the basis of a district court's incorrect evidentiary ruling, an appellant must "demonstrate either that his claim was adequately preserved or that the ruling constituted plain error." *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004).

Further, "[A]n objection on specific grounds does not preserve the error for purposes of appeal on other grounds." *Judd v. Rodman*, 105 F.3d 1339, 1342 (11th

Cir. 1997) (holding plaintiff's decision to object to admitted evidence solely on the basis of relevancy, both before and during trial, precluded her from raising on appeal a different Rule 412 objection to admissibility); *see also Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997) (holding plaintiffs failed to preserve their hearsay and Rule 403 objections on appeal by virtue of their trial objections that were either based on relevance or did not specify the grounds for objection).

Here, during the pretrial conference, Petersen objected to the use of the disciplinary reports to show intent pursuant to Rule 404(b).  This ground for objection, and even Petersen's broader statement at the conference that the disciplinary reports should not "even be brought up in this case," are different from, and therefore do not preserve, his current objection based on improper impeachment.

### ii. The district court did not commit plain error by permitting Defendants to question Petersen regarding the disciplinary reports

When an evidentiary issue is not preserved on appeal, a court of appeals may take notice of plain error.  Fed. R. Evid. 103(d).  To constitute plain error, the district court's decision to permit Defendants to question Petersen regarding the disciplinary reports must have been:  (1) an error; (2) that was plain; (3) that affected Petersen's substantial rights; and (4) the error must have seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  *E.g.*, *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014).

6

Though the district court erred in permitting Defendants to question Petersen regarding the disciplinary reports, Petersen was not thereby unduly prejudiced, and the district court therefore did not commit plain error. *See id.* at 592 (explaining an error affects a party's substantial rights if it is prejudicial).

Regarding error, and as indicated by Petersen, no evidentiary rule permits this type of evidence to be introduced for general impeachment purposes. Contrary to Defendants' assertion, Rule 608(b) is inapplicable, as the disciplinary reports are not probative of Petersen's character for truthfulness. *See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) ("Acts probative of untruthfulness under Rule 608(b) include such acts as forgery, perjury, and fraud."). Impeachment by contradiction, the other method of impeachment asserted by Defendants, is also inapposite, as Petersen did not testify that he has never possessed a knife or that he has never had access to a knife.

Serving no impeachment purpose, questioning Petersen regarding the disciplinary reports was improper character evidence, prohibited by Rule 404; and the district court's decision to allow these questions was error. Fed. R. Evid. 404 ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Nonetheless, this error did not impair Petersen's

substantial rights or unduly prejudice him.  Thus, the standard for plain error review is not satisfied.

To show impairment of substantial rights and prejudice, Petersen has the burden of demonstrating that the error "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993); *United States v. O'Keefe*, 461 F.3d 1338, 1348 n.10 (11th Cir. 2006) (same).  It is here where Petersen falls short.

Defendants' questions to Petersen regarding the disciplinary reports were brief—spanning less than one page of the trial transcript.  Besides the questions themselves, Defendants mentioned the disciplinary reports only one other time— during closing, and this was, again, done briefly.

In contrast to the brevity in which Defendants dealt with the disciplinary reports, they spent substantial time developing other evidence.  This includes evidence that Petersen was charged, through prison processes, with possession of a weapon and assaulting a correctional officer for his actions during the encounter; that he was found guilty of those charges after a hearing; and that he did not appeal this verdict, though he had the right to do so.  Additionally, Defendants presented testimony from Officers Blanton, Smith, Hoopiiaina, and Ouzts that no Defendant hit or kicked Petersen while Petersen was being subdued, and testimony from Smith

and Hoopiiaina that Petersen charged at Smith with a weapon.[1]  Thus, comparing the properly admitted evidence to that concerning the disciplinary reports, the Court concludes that Petersen has not met his burden of establishing that the outcome of the trial was affected.

Moreover, this conclusion of nonreversible error is appropriate even if Petersen had properly preserved his objection.  *See United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990) ("[E]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome . . . reversal is not warranted.").

## 2. Petersen's questions to his witnesses regarding whether they heard any mention of Petersen having a knife before, during, or after the encounter

Petersen called five witnesses at trial—Robbie Brower, Lorenzo Mitchell, Clemmiet Carter, Harry Newkirk, and Erick Bowen.  Each was an inmate at the Valdosta State Prison during the encounter, and each testified to having witnessed the encounter.  On direct examination of his first witness, Brower, Petersen asked, "During the time of the incident or after the incident, did you hear any mention of me having a knife or a knife being involved in this incident?"  Brower answered in

---

[1] Defendant Childers also read into evidence his sworn witness statement written after the encounter in which he states that Petersen possessed a weapon during the encounter and that the minimum force necessary to restrain Petersen was used.

the negative.  Petersen posed nearly the identical question to his next witness, Mitchell—"During the incident or any time after the incident did you hear about me having a knife or any mention of a knife being involved in this altercation?"  Mitchell also responded, "no."

During the testimony of the third witness, Carter, Petersen asked a similar question—"[B]efore, during or after this incident, do you ever recall hearing about me being in possession of a knife?"  After Petersen posed this question to Carter, the court interrupted, instructing Petersen that it was "an improper question," as it would elicit hearsay and was not probative of whether Petersen had possessed a knife.  The court further instructed the jury "to disregard the prior testimony from the other witnesses in response to that question."  Petersen asked no further questions of Carter.

On appeal, Petersen argues the jury should have been permitted to consider the testimony of Brower, Mitchell, and Carter regarding whether they heard any mention of a knife before, during, or after the encounter.

The Court agrees with the district court's determination that these witnesses' statements have little, if any, probative value and are irrelevant to the issue of whether Petersen possessed a knife.  Simply put, that a witness did not hear anyone mention before, during, or after the encounter that Petersen had a knife does not have the tendency to prove the fact which Petersen intended to prove:  that he did not have

10

a knife.   Thus, the district court did not abuse its discretion in excluding this testimony due to the lack of probative value.  *See* Fed. R. Evid. 401, 403.

Further, even if the district court erred in excluding this testimony, such an error would not be reversible error.  After Carter's testimony, Petersen called his fourth prisoner-witness, Harry Newkirk, and altered his questions in light of the district court's evidentiary ruling and instruction to Petersen that he could ask questions probative of his witnesses' personal knowledge of the absence of a knife. Petersen asked Newkirk "To the best of your knowledge, do you recall me having a knife that day?" Newkirk replied "no."  Petersen followed up with, "Do you recall a knife being involved in that incident in any shape, size or form?"  To which Newkirk also replied "no."

Similarly, Petersen called Erick Bowen to the stand and asked, "Do you recall me having a knife during this incident?"  Bowen replied, "no."  Petersen did not recall his prior witnesses to ask them about their personal knowledge of the absence of a knife.

Thus, given that Petersen was able to elicit from his two remaining witnesses the testimony he desired, any error would not be reversible.  *See Hawkins*, 905 F.2d at 1493; *Hearn v. McKay*, 603 F.3d 897, 904 (11th Cir. 2010) (holding it was harmless error to exclude testimony that was cumulative and corroborative of evidence presented by another witness).

11

## B. Jury Instruction and Verdict Forms

After closing arguments the court charged the jury, which included the instruction:

> Without some degree of personal participation in the alleged constitutional deprivation of a plaintiff's rights by a defendant, no liability exists.  Each defendant is only liable for his own misconduct.  In other words, liability cannot be imposed upon a defendant whose actions were not the proximate cause of any alleged injury.

Additionally, the court gave the jury five separate verdict forms, one for each Defendant, which asked whether each Defendant "used physical force maliciously and sadistically for the purpose of causing harm to [Petersen]."  A determination of liability as to each Defendant required that this question be answered "yes" for that Defendant.  After the jury was charged, the court asked the parties whether there were objections to the jury instructions, to which Petersen responded, "No."

After deliberation, the jury rendered its verdict, finding that none of the Defendants had "intentionally used physical force maliciously and sadistically for the purpose of causing harm to [Petersen]."  Judgment was entered for Defendants.

On appeal, Petersen argues the jury instruction and verdict forms were erroneous for: (1) creating for Petersen an impossible standard of proof due to his

12

inability to observe which Defendants beat him,[2] and (2) eliminating the possibility of finding that Defendants breached their duty to intervene.

### 1. Petersen preserved this issue for appeal

As an initial matter, this issue is properly before the Court on appeal. While generally a party may not assign error to a jury instruction "unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection," *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) (citing Fed. R. Civ. P. 51), "[t]he failure to object (to jury instructions) may be disregarded if the party's position has previously been clearly made to the court and it is plain that a further objection would be unavailing." *Indus. Dev. Bd. of Town of Section v. Fuqua Indus., Inc.*, 523 F.2d 1226, 1237 (5th Cir. 1975) (quoting 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2553 (3d ed.)) (internal quotation marks omitted); *see also Cohen v. Franchard Corp.*, 478 F.2d 115, 122 (2d Cir. 1973) (explaining that the purpose of Rule 51 is to "prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time"); *Williams v. Hennessey*, 328 F.2d 490, 491 (5th Cir. 1964) ("Rule 51 does not require formality in making the objection, and the form of the objection is not important as long as it

---

[2] During his testimony, Petersen stated that though he knew the Defendants were present during the encounter, he did not know which officers among them struck him—his explanation being that he was covering himself for protection against the blows, thus obscuring his vision.

is clear that the trial judge was informed as to the possible errors and was given an opportunity to correct them.").

Here, though Petersen did not formally object to the jury instruction or verdict forms, the district court raised with Defendants, during trial, the same objection that Petersen now argues on appeal:  that they set an impossible standard of proof due to the nature of the alleged act.  This is sufficient to preserve this issue for appeal, though admittedly it is a close call.  *See Chess v. Dovey*, 790 F.3d 961, 971 (9th Cir. 2015) (reviewing jury instructions *de novo* because, even though the instructions were not formally objected to by plaintiff, the district court had expressed misgivings about them before they were presented to the jury).

## 2. The jury instruction and verdict forms did not erroneously set for Petersen an impossible standard of proof for recovery

To establish a claim for excessive force, a plaintiff must show that the defendants acted with a malicious and sadistic purpose to inflict harm.  *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).  Additionally, to hold a defendant liable for excessive force, a plaintiff must prove causation.  *See Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a s 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.");  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (explaining that § 1983

14

"plainly requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation"); *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) ("Causation is an essential element of a section 1983 cause of action."); *Deaton v. Montgomery Cty.*, 989 F.2d 885, 889 (6th Cir. 1993) ("Congress did not intend § 1983 liability to attach where causation is absent."). This causal element is what the jury instruction and verdict forms relay.

Next, Petersen presented evidence such that the jury could have found that each Defendant "intentionally used force maliciously and sadistically for the purpose of causing harm to [Petersen]." For example, Petersen testified that all five Defendants were present during the encounter and that he "could see at least four to five pairs of feet stomping on [him]." In addition, Petersen had five eyewitnesses describe the encounter in detail, including three who identified individual Defendants. From such testimony, and as permitted by the jury instruction and verdict forms, the jury could have found each Defendant liable. Thus, Petersen was able to present a case in which a jury could have held the Defendants responsible for using excessive force—contrary to his contention otherwise.

**3. Petersen waived his new argument that the jury should have been charged on the duty to intervene**

15

Petersen also argues that the jury instruction was erroneous because it is "irreconcilable" with the Court's "long line" of cases that impose liability on correctional officers for failing to intervene when they witness another officer using excessive force. However, to the extent Petersen argues a new trial should be given due to the district court's failure to charge the jury on the duty to intervene, his argument is waived.

"This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir.1994)) (internal quotation marks omitted); *see also Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."). Thus, even if Petersen had objected to the jury instruction on the basis that it did not take into account a duty to intervene claim, Petersen's objection would have been to no avail, because he never alleged such a claim. Instead, Petersen only pleaded the claims of "excessive use of force, malicious intent and denial to my right of Due Process"—claims involving affirmative abusive acts by Defendants.

Though Petersen may argue on appeal that his broad pleading implies that each Defendant breached his duty to intervene—by virtue of the presence of multiple defendants alleged to have used excessive force against him—the language

16

employed in the Complaint was not sufficient to put the Defendants or the district court on notice of such a theory. Further, Petersen did not mention, much less assert, the claim of failure to intervene during the two pretrial conferences or trial. Ultimately, while courts show leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education, this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action. *GJR Investments, Inc. v. Cty. of Escambia,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Finally, the district court did not commit plain error by not instructing the jury on the duty to intervene. *Farley*, 197 F.3d at 1329 (dictating that plain error review is appropriate where a party fails to raise an objection to a jury instruction and objection would not have been futile). Put simply, the district court could not have committed plain error by failing to instruct the jury on a theory that had not been raised by Petersen.

## C. Petersen's Request for Appointment of Counsel

Prior to trial, Petersen moved the district court to appoint counsel on his behalf. The court addressed and denied Petersen's motion during the April 2016

pretrial conference but continued the trial in order to give Petersen additional time to obtain counsel. Petersen did not obtain counsel on his own behalf, and none was appointed.

Petersen argues the district court abused its discretion in declining to appoint him counsel; but his argument fails. As this court has explained:

> A civil litigant, including a prisoner pursuing a section 1983 action, has no absolute constitutional right to the appointment of counsel. The appointment of counsel is instead a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner.

*Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (internal citations omitted); *see also Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) ("The trial court is not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C. s 1983 (Supp. III 1979) unless the case presents exceptional circumstances.").

Moreover, the district court has "broad discretion" in deciding whether to appoint counsel. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999); *see also Killian v. Holt*, 166 F.3d 1156, 1157 (11th Cir. 1999) (same).

Here, the Court does not conclude that this case is "so novel or complex" such that the district court exceeded its discretion in declining to appoint Petersen counsel. At bottom, this is a straightforward excessive force case involving a single incident, and the trial court was in the best position to determine whether Petersen was capable of adequately investigating or presenting his case to the jury. *See Ulmer*, 691 F.2d

18

at 213.  As stated by this court, the "key" in determining whether to appoint counsel "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court.  Where the facts and issues are simple, he or she usually will not need such help."  *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).  The trial court did not abuse its discretion in determining that Petersen did not need counsel to assist him.

## IV.    CONCLUSION

The district court did not commit reversible error.  Therefore, we affirm.

JORDAN, Circuit Judge, concurring.

Given the applicable standards of review that govern Mr. Petersen's claims, most of which are deferential, I agree that no reversible error has been shown. Nevertheless, as the Court's opinion explains, there were some errors and mistakes in the district court (e.g., the use of the disciplinary reports), including some by Mr. Petersen himself (e.g., his failure to object to the jury instructions), that may have been avoided if Mr. Petersen had counsel. Because federal courts do not pay lawyers who accept appointments to represent pro se litigants—the lawyers take the cases pro bono or with the hope of obtaining statutory fees if they prevail—I believe district courts should be appointing counsel more in pro se cases like this one that go to trial. This case would have benefitted from such an appointment.