**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12501

Non-Argument Calendar

————————————

DEBBIE LOUISSAINT,

*Plaintiff-Appellant,*

*versus*

MIAMI-DADE COUNTY,
JUAN PEREZ,
ALAN JENKINS,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-24141-CMA

————————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and KIDD, Circuit Judges.

PER CURIAM:

Debbe Louissaint appeals the denial of partial summary judgment in favor of her complaint of retaliation under Title VII and the Florida Civil Rights Act. She also appeals the denial of her motion for judgment as a matter of law or a new trial. No reversible error occurred. We affirm.

## I. BACKGROUND

The Miami-Dade Police Department hired Louissaint, a black, Haitian-American woman, as a police officer in July 2007. During her tenure, the Department disciplined her several times. She received a written reprimand in 2015 for insubordination and offensive conduct. She received a five-day suspension in 2015 when she did not report to work and changed a leave code in the Department's electronic payroll system without approval. And she received a five-day suspension in 2017 for sexual harassment. She appealed her suspensions to the Miami-Dade County Personnel Department, which upheld each suspension.

The events giving rise to this appeal began when Sergeant Sherri Bernabe, Louissaint's immediate supervisor for four months in 2017, had to "continuously" monitor Louissaint, who was often late to work and did not respond to calls. Bernabe informally counseled Louissaint for these issues, but Louissaint never explained why she was late or had failed to respond to calls. In 2018, the Department transferred Louissaint to another police squad. Although Bernabe was no longer Louissaint's immediate supervisor, she supervised officers on the day shift, including Louissaint.

Lieutenant Alan Jenkins assumed Bernabe's post in 2018. Bernabe warned Jenkins that Louissaint would come to work late "all the time" and not show up to calls. Jenkins investigated. He received a report of activity for the platoon and noticed that Louissaint had logged little activity. He also noticed that Louissaint would report in her daily activity report that she was fueling her patrol car at the beginning of each of her shifts. Jenkins found this activity unusual and did not believe that Louissaint would have needed to fuel her patrol car that often. He obtained Louissaint's fuel authorization reports and confirmed that those reports did not match Louissaint's daily activity reports. Jenkins relayed his findings to his superiors.

Jenkins, at the instruction of his superiors, contacted the Miami-Dade Police Department's Professional Compliance Bureau. The Bureau may investigate internal allegations of police misconduct. The Bureau declined to investigate Louissaint and told Jenkins that the district should handle the investigation. Jenkins's superiors then instructed him to conduct surveillance on Louissaint. Jenkins and another lieutenant then began conducting surveillance on Louissaint's residence. Jenkins would park near her residence at 6:30 a.m. on the days that she was scheduled to work. He saw that she often did not leave her home until after her shift had started. Based on this behavior, Jenkins placed Louissaint on administrative leave with pay. He then drafted a disciplinary activity report and issued it to Louissaint. The report charged Louissaint with violating the County's personnel rules and Departmental rules by

falsifying entries in her daily activity reports and not responding to calls.

Louissaint, with the help of a police union representative, prepared an objection to the disciplinary activity report. She explained that Bernabe had never approached her about any misconduct. She also objected to Jenkins conducting the investigation of her. Instead of a written response, the Department met with Louissaint and her representative in May 2019. Several County officials were present, including police Director Juan Perez. Louissaint explained that she was late to work because she had to care for her mother who had stage four breast cancer and that before Jenkins assumed his position with the Department, Sergeant Magwood, her direct supervisor, told her that she could come in late and report that she was fueling her patrol car.

Louissaint also alleged that Jenkins had singled her out because she was the "only black, Haitian female [in the] platoon at the time." Perez acknowledged that he could "give her another opportunity," and in lieu of firing her, he offered to suspend her without pay, if she agreed to sign a memorandum of understanding. Several days after the meeting, Louissaint received a copy of the memorandum, which imposed a 20-day suspension. It also included a standard provision that required Louissaint to release the County from any claims arising under Title VII and the Florida Civil Rights Act. Louissaint refused to sign the memorandum and sent Perez a written complaint on June 3, 2019, through her

all-white, male chain of command. She reiterated her complaint of discrimination and retaliation. Perez fired her three weeks later.

Louissaint filed a third amended complaint against the County. She alleged that the County retaliated against her, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act, Fla. Stat. § 760 *et seq.*, after she complained that the County failed to follow its standard procedure for internal investigations based on her race and national origin, *see* 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). She sought partial summary judgment on this claim. The district court ruled that Louissaint had rebutted the County's proffered reason for her termination—violation of County policies—by presenting evidence of comparators who also violated County policies but were not required to sign a memorandum waiving all state and federal claims as a condition of continued employment. But because there were factual disputes over the similarity of these comparators, the district court denied partial summary judgment to Louissaint.

At trial, a jury found in favor of the County on Louissaint's claims of retaliation. Louissaint then moved for judgment as a matter of law or a new trial, which the district court denied. It concluded that sufficient evidence proved that she lacked an honest belief that the County had discriminated against her and supported the jury verdict that she did not engage in a protected activity.

## II. STANDARDS OF REVIEW

Three standards govern our review. First, we review the denial of a motion for judgment as a matter of law *de novo*. *Gray v.*

*Koch Foods, Inc.*, 144 F.4th 1298, 1308 (11th Cir. 2025). In doing so, we view the evidence in the light most favorable to the nonmoving party. *Id.* Second, we review the denial of a motion for a new trial for abuse of discretion. *Id.* at 1311. An abuse of discretion occurs when the district court "applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *Id.* Third, we review evidentiary rulings for abuse of discretion. *Camps v. Bravo*, 142 F.4th 743, 749 (11th Cir. 2025). We will not reverse an evidentiary ruling unless it had "a substantial influence on the outcome of a case." *MONY Life Ins. Co. v. Perez*, 146 F.4th 1018, 1029 (11th Cir. 2025).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the denial of partial summary judgment because of disputed material facts about Louissaint's claims of retaliation under Title VII and the Florida Civil Rights Act is unreviewable where the case proceeded to trial. Second, we explain that Louissaint was not entitled to judgment as a matter of law or a new trial because the evidence supported the jury verdict that she did not engage in a protected activity, and any alleged error in evidentiary rulings did not have a substantial influence on the outcome of the case.

### A. The District Court's Denial of Partial Summary Judgment is Unreviewable

In general, a party may not appeal an order denying summary judgment after there has been a full trial on the merits. *See Ortiz v. Jordan*, 562 U.S. 180, 183-84 (2011) ("May a party, as the

Sixth Circuit believed, appeal an order denying summary judgment after a full trial on the merits? Our answer is no."). The exception is a purely legal issue. *See Dupree v. Younger*, 598 U.S. 729, 735 (2023) ("While factual issues addressed in summary-judgment denials are unreviewable on appeal, the same is not true of purely legal issues—that is, issues that can be resolved without reference to any disputed facts."); *see also Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 859 (11th Cir.), *cert. denied*, 144 S. Ct. 423 (2023) ("[A]rguments denied at summary judgment are appealable after a trial on the merits if they raise purely legal issues" (citation and internal quotation marks omitted)).

*Dupree* does not apply. The district court denied partial summary judgment in favor of Louissaint's complaint of retaliation after it found that factual disputes existed over the similarities of the comparators she presented to rebut the County's stated reason for her termination. So whether her comparators were similarly situated is not a purely legal issue. *See Dupree*, 598 U.S. at 735; *Am. Builders Ins. Co.*, 71 F.4th at 859. And because her case proceeded to trial on the merits, whether the district court erred in its denial of partial summary judgment is not reviewable. *See Ortiz*, 562 U.S. at 183-84.

B. *Sufficient Evidence Supports the Verdict that Louissaint Did Not Engage in a Protected Activity*

Louissaint argues that she was entitled to judgment as a matter of law or a new trial. District courts seldom enter a judgment as a matter of law, as doing so "is appropriate only when there can be but one reasonable conclusion as to the verdict." *Thomas v.*

*Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023) (citation and internal quotation marks omitted). Likewise, district courts seldom grant a new trial based on the weight of the evidence, as doing so "is appropriate only where the verdict is contrary to the great, and not merely the greater, weight of the evidence." *Id.* (alteration adopted) (citation and internal quotation marks omitted). Louissaint's argument falls short of the threshold for either remedy.

To support her claim of retaliation, Louissaint had to prove that she "engaged in a statutorily protected activity," "suffered an adverse action," and that "the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (citation and internal quotation marks omitted). To establish that she engaged in a statutorily protected activity, she had to prove that she subjectively, in good faith, believed that her employer was engaged in an unlawful employment practice and that her belief was objectively reasonable in the light of the facts and record presented. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311-12 (11th Cir. 2002) (citation and internal quotation marks omitted). It is "not enough for a plaintiff to allege that h[er] belief . . . was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* at 1312 (citation and internal quotation marks omitted).

Sufficient evidence supports the jury finding that Louissaint did not engage in a statutorily protected activity. Louissaint

24-12501                Opinion of the Court                9

testified that no one spoke to her about her tardiness and that Sergeant Magwood had given her permission to be tardy and to falsify her daily attendance reports. She also testified that the Department subjected her to disparate treatment because similarly situated white, male officers did not face termination for comparable misconduct and Lieutenant Jenkins, instead of the Bureau, had investigated her misconduct. But Louissaint also acknowledged that she had never heard anyone in her chain of command make any derogatory comments about her being black or Haitian-American. And Jenkins investigated Louissaint only after the Bureau had declined to investigative her and his superiors had given him permission to do so. Sergeant Bernabe also testified that she counseled Louissaint about her tardiness. And Louissaint did not deny the allegations in the report or try to explain her side of the story in her written objection to the report. Nor was there any evidence to corroborate her self-serving statements that Sergeant Magwood had given her permission to come in late and falsify her daily attendance reports. Instead, the evidence established that no sergeant had that authority.

A jury could reasonably find that Louissaint did not engage in a protected activity because her admissions and behavior undermine any claim that she had a genuine subjective belief that her employer was engaged in an unlawful employment practice. *Thomas*, 71 F.4th at 1312; *Weeks*, 291 F.3d at 1311-12. Her admission that she heard no derogatory comments about her race or national origin from her chain of command undermines any perceived animus. Her initial failure to deny the allegations of misconduct or to

offer a defense undermines the sincerity of her belief and implies that she accepted the legitimacy of the discipline instead of perceiving it as discrimination. Finally, the jury could have viewed her reliance on an uncorroborated, self-serving statement—that Sergeant Magwood gave her permission to falsify reports when the evidence established that no such authority existed—as a fabrication to excuse her clear misconduct, instead of a good-faith belief that she was being treated unfairly during the disciplinary process. Because the evidence does not establish that there can only be "but one reasonable conclusion as to the verdict," the district court did not err in denying judgment as a matter of law. *Thomas*, 71 F.4th at 1312.

The district court also did not abuse its discretion in denying a new trial. Louissaint argues that the district court gave too much weight to the credibility determinations of the jury and did not properly reweigh the evidence when it denied a new trial, but we disagree. The existence of alternative inferences is not a valid basis for a district court to usurp the jury's role as finder of fact. *See Narcisse v. Illinois Cent. Gulf R. Co.*, 620 F.2d 544, 548 (5th Cir. 1980) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." (citation and internal quotation marks omitted)).

Louissaint also argues that she was entitled to a new trial based on three erroneous evidentiary rulings. None of her arguments persuade us. We address each in turn.

First, Louissaint argues that the district court erred when it ruled that her June 3, 2019, complaint was inadmissible hearsay and only allowed the cover page of the complaint into evidence as proof that she had made a claim of discrimination. According to her, the exclusion of her June 3 complaint kept the jury from making appropriate findings and credibility determinations.

Even assuming it was error to exclude the June 3 complaint, the error did not have "a substantial influence on the outcome of [the] case." *MONY Life Ins. Co.*, 146 F.4th at 1029. The jury knew that Louissaint filed the complaint, heard what she complained of, and Louissaint testified about why she believed she was being discrimination against. So the inclusion of the June 3 complaint, in which she outlined why she believed she was discriminated against, would have been cumulative. *See Hearn v. McKay*, 603 F.3d 897, 904 (11th Cir. 2010) ("Viewing the record as a whole, we think that the exclusion of the cumulative evidence did not substantially influence the outcome of the case.").

Second, Louissaint argues that the district court erred when it limited the testimony of Sergeant Harrius Johnson, a former sergeant with the Department. According to her, Johnson's testimony would have helped the jury understand how the County handles investigations of police misconduct. The district court limited his testimony because he was not employed by the County when Louissaint received the disciplinary activity report and was not disclosed as an expert witness.

Even assuming it was error to exclude Sergeant Johnson's testimony, the error did not have "a substantial influence on the outcome of [the] case." *MONY Life Ins. Co.*, 146 F.4th at 1029. The jury heard testimony about the standard procedure for investigations of police misconduct and why Louissaint's investigation proceeded as it did. Although she contends that the jury heard "only the County's version" of the events, the record tells a different story. Louissaint presented evidence of the County's policies and procedures, which outlined the steps supervisors should take during investigations. She called County witnesses to explain policies and procedures. And she also testified about her understanding of the investigatory process and why she believed the County deviated from that process. So the inclusion of Sergeant Johnson's testimony would have been cumulative. *See Hearn*, 603 F.3d at 904.

Third, Louissaint argues that the district court erred when it declined to compel the testimony of the County's records custodian. According to her, the custodian's testimony would have established that Sergeant Bernabe, a white female officer, was investigated by the Bureau instead of the district, which would have established that the County departed from its standard procedure when it investigated Louissaint, a black Haitian-American female. The district court ruled that the custodian's testimony was extrinsic evidence to a collateral matter.

Even assuming it was error not to compel the testimony of the County's records custodian, the error did not have "a substantial influence on the outcome of [the] case." *MONY Life Ins. Co.*, 146

F.4th at 1029. Any potential bias regarding the investigation of Louissaint did not touch on whether Louissaint engaged in a protected activity, or whether the jury believed that Louissaint subjectively, in good faith, believed that her employer was engaged in an unlawful employment practice. Because the jury found that Louissaint did not engage in protected activity, it unlikely that the exclusion of the custodian's testimony substantially influenced the outcome of the case. *See Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333 (11th Cir. 2011) ("[W]e will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect . . . by demonstrating that the error probably had a substantial influence on the jury's verdict." (citation and internal quotation marks omitted)). Because the verdict is not "contrary to the great weight of the evidence," the district court did not abuse its discretion in denying a new trial. *Thomas*, 71 F.4th at 1312 (citation and internal quotation marks omitted).

## IV. CONCLUSION

We **AFFIRM** the judgment against Louissaint.